JIM HALL, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed July 1, 1915.

Petition for Rehearing Denied Oct. 13, 1915.

CRIMINAL LAW—MURDER—CONTINUANCE—MISTAKEN KILLING OF ONE WITH PREMEDITATED DESIGN TO KILL ANOTHER PERSON IS MURDER IN THE FIRST DEGREE.

1. The rule is that trial courts have a broad discretion in granting or denying applications for continuance of causes, and that their exercise of this discretion will not be reversed by an appellate court unless it be clearly shown that there has been a palpable abuse of such discretion to the manifest injury of the party against whom it has been exercised. The rule further requires that applications for continuance in criminal cases shall be more closely and rigidly scanned than in civil causes because of the greater temptation in the criminal case to seek delay.

2. Where the affidavit in a criminal cause for a continuance on the ground of the absence of witnesses complies strictly with the requirements of the rule in such applications, but the State in opposition thereto proves conclusively that no such parties as those named in the affidavit as the absent witnesses resided in the county where the crime was committed, and by proof makes out a strong probability that the parties named as the absent witnesses were not in existence anywhere, but were fictitious persons named as a ruse to secure delay only, the appellate court will not disturb the exercise by the trial court of the broad discretion vested in him in such cases in denying such application for continuance.

3. One who kills one person through mistaken identity, while attempting and intending with premeditated design to kill another person, is guilty of murder in the first degree, and the indictment in such a case properly alleges that the premeditated design was to effect the death of the person actually slain, since the law transfers the felonious intent in such a case to the actual object of his assault, and the homicide so committed is murder in the first degree.

4. Assignments of error that are not argued in the briefs of counsel before an appellate court will be treated as abandoned.

Writ of Error to Circuit Court, for LaFayette County; M. F. Horne, Judge.

Affirmed.

*J. M. Gornto* and *J. Albert Breare*, for Plaintiff in Error;

*T. F. West, Attorney General*, and *C. O. Andrews, Assistant*, for the State.

TAYLOR, C. J. The plaintiff in error by writ of error

4

seeks reversal of a judgment and sentence of conviction of the crime of murder in the first degree in the Circuit Court of LaFayette County.

′ The first assignment of error is the denial of the defendant's motion for a continuance of the cause until the next term of the court on the ground of the absence of material witnesses. The affidavit in support of this motion was in compliance with the rule in such cases, but the State in opposition thereto proved quite conclusively that there were no such persons residing in the county of LaFayette as the two witnesses alleged in the defendant's affidavit to be absent. The State's proof established at least a great probability that there were no such persons in existence anywhere as the two pretended witnesses alleged to be absent, and that the naming of them as being absent was a mere ruse to effect delay only.

The rule is that trial courts have a broad discretion in granting or denying applications for continuance of causes, and that their exercise of this discretion will not be reversed by an appellate court unless it be clearly shown that there has been a palpable abuse of such discretion to the manifest injury of the party against whom it has been exercised. The rule further requires that applications for continuance in criminal causes shall be more closely and rigidly scanned than in civil causes because of the greater temptation in the criminal case to seek delay. Under the circumstances disclosed in the transcript with reference to the application made here we cannot say that there was such an abuse of judicial discretion in the denial of it as would justify this court in a reversal of the trial judge therein.

It is further contended that the conviction of the de-

fendant was not supported by the evidence in the case. That the indictment alleges that the defendant shot and killed Isham C. Walker from and with a premeditated design to effect the death of the said Walker, and that there was no proof to show that the defendant ever knew the deceased Walker, or ever met him before the killing, or that he had any grudge or enmity against him or any motive in killing him. In other words, that there was no proof to sustain the allegation that the defendant killed Walker with a premeditated design to effect his death. We think that the proofs in the case probably establish the truth of the facts upon which this contention is predicated; but the proofs go further, and, we think, establish the following case against the defendant: The defendant Hall, while having no grudge or enmity towards Walker, the deceased, not even being acquainted with him, did have a mortal grudge and enmity towards one Lee Boyd, which enmity had existed between them for some time. That Lee Boyd, who resided about 250 yards from the scene of the homicide, had been the night of the homicide, passing back and forth between his house and the camp of a party of camp hunters with whom he was acquainted, and one of whom was the deceased Walker. That this camp of the hunters was located about 175 yards from the scene of the homicide, the latter being between the camp and Lee Boyd's house. That the defendant armed with a shot gun called at Lee Boyd's house that night prior to the homicide making inquiry for him, and was informed that he was down at the hunters' camp. That thereafter on the same night the defendant, still armed with a shot gun, walked through the camp grounds of the camp hunters suspiciously and closely scanning the

faces of everyone present, and did not speak to anyone, although politely spoken to and invited to come up and be sociable. In the mean time while the defendant was in the camp Lee Boyd had returned to his own home. After leaving the camp the defendant went towards the railroad track on which the homicide was committed. Not long after the defendant left the camp the deceased Walker also left the camp to go down to Lee Boyd's house with the avowed purpose of preventing the expected difficulty between the defendant and Lee Boyd, and within a few minutes after he left the camp he was shot down and killed by the defendant in the dark on the railroad track, the defendant, as he told other parties that same night, mistaking him for Lee Boyd, whom he intended to kill, and for whom, the evidence strongly tends to prove, he was lying in wait at the scene of the tragedy. This makes out a case of murder as laid in the indictment.

One who kills a person by mistake, while attempting and intending with premeditated design to kill another person, is guilty of murder in the first degree, and the indictment in such a case properly alleges that the premeditated design was to effect the death of the person actually slain, since the law transfers the felonious intent in such a case to the actual object of his assault, and the homicide so committed is murder in the first degree. Sec. 99 Kerr on the Law of Homicide; 1 Bishop Crim. Law (8th ed.) Sec. 328; Wharton's Crim. Law (9th ed.) Sec. 382; State v. McGonigle, 14 Wash. 594, 45 Pac. Rep. 20; Burchet v. Commonwealth, 8 Ky. Law 258, 1 S. W. Rep. 423; 4 Blackstone's Com. 200; State v. Payton, 90 Mo. 220, 2 S. W. Rep. 394; State v. Murray, 11 Ore. 413, 5 Pac. Rep. 55; Jackson v. State, 106 Ala. 12, 17 South.

Rep. 333; Pinder v. State, 27 Fla. 370, 8 South. Rep. 837; Clarke v. State, 78 Ala. 474; Seigel v. Long, 169 Ala. 79, 53 South. Rep. 753, 33 L. R. A. 1070, and citations in notes; People v. Suesser, 142 Cal. 354, 75 Pac. Rep. 1093; 1 Wharton's Crim. Law (11th ed.) Sec. 508. From what has been said above it follows that there was no error in the following charge given to the jury and assigned as the 5th and 6th assignments of error: "Under the laws of this State if the principal in the first degree and the principal in the second degree had and entertained a premeditated design to kill and murder one Lee Boyd and if to murder Boyd they shot as alleged Isham G. Walker who was then and there by the defendants mistaken for Boyd, though a design may have been to kill Boyd it may be that there was also a premeditated design to effect the death of Walker, if the jury find beyond a reasonable doubt that the defendants and each of them had and entertained a premeditated design to effect the death of the particular person shot at, at the time of and before the shooting. If the defendants, one as principal in the first degree and the other as principal in the second degree formed and had and entertained a premeditated design to effect the death of any particular person and in pursuance of such premeditated design went in search of such particular person, and in pursuance of such premeditated design waited or was at a place for any length of time for the person being sought for to come along or to get to a place where such design could be executed, and if such person for the death of whom no premeditated design was entertained came along and got to such place and such person was killed by the manner and means and in the form alleged

in the indictment, intentionally and purposely and of and from a premeditated design to effect the death of the particular person, though mistaken for another, then such mistake as to the identity of such person would not excuse or justify or mitigate such killing." This charge though somewhat verbose and involved practically told the jury that if they found from the evidence beyond a reasonable doubt that the defendant while lying in wait for Lee Boyd with a premeditated design to take the life of Lee Boyd, and not that of Isham C. Walker, but mistakenly takes said Walker for Boyd, and intentionally shoots Walker thinking that he was Boyd, and kills him in furtherance of his premeditated design to kill Boyd, that such mistake in his victim does not excuse, justify or mitigate his act, but that it would be murder in the first degree. Viewed in this light the charge presents no ground of reversible error.

There are other assignments of error predicated on evidence admitted and rejected, but these are not argued or presented here, and will therefore be treated as abandoned.

We are of the opinion that the evidence fully sustains the verdict found both in law and in fact, and finding no error in the record the judgment of the Circuit Court in said cause is hereby affirmed at the cost of LaFayette County, the defendant having been adjudged to be insolvent.

SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.