MARTIN F. JARVIS v. STATE.

156 So. 310.
Division A.
Opinion Filed April 19, 1934.
Petition for Rehearing Denied July 18, 1934.

*J. Irvin Walden, Sidney J. Perry* and *J. D. Gill,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Dewey A. Dye,* State Attorney, for the State.

ELLIS, J.—Martin F. Jarvis was indicted, tried and convicted for the murder in the first degree on March 12, 1933, of Lacy Nell Dyel. The indictment was presented on May 3, 1933, and on the 11th day of the same month he was arraigned and pleaded not guilty. The transcript of the

record contains a statement to the effect that the "Court ascertained that the defendant was insolvent and unable to employ Counsel," whereupon the court appointed three members of the bar to defend the accused and the cause was then set for trial at nine o'clock A. M. on May 15th, four days after the plea of not guilty was entered.

There was a motion for a continuance, but it is not contained in a bill of exceptions, nor is there any certificate of authenticity attached to it as the Chapter 12019, Laws 1927 (Sec. 4610-4612 C. G. L.) requires. This irregularity in the making up of the transcript, however, was by order of the court permitted to be corrected so that the motion for a continuance appears in the bill of exceptions.

The document referred to as the bill of exceptions was not made up in accordance with Rule 103 nor Special Rule 3 of the Rules of Circuit Courts in Law Actions. It consists of the official court reporter's transcription of the testimony taken at the trial, and notes made apparently by him of the persons present, the remark made by defendant's counsel that he did not feel that he had had ample time in which to prepare the defense, the Judge's reply thereto, the Judge's charge to the jury and a note of' an incident occurring after the jury had retired, all over the signature of the official court reporter by way of authentication; the assignment of errors and the signature of the Judge at the end of a form of certificate prescribed by the rule to be attached to a bill of exceptions. It seems as if the stenographer's transcription of his notes made at the trial, the Judge's charge to the jury and the assignment of errors were just sandwiched in between the caption and formal certificate of a bill of exceptions.

We do not say that such apparently unconcerned achieve-

ment may not be technically named a bill of exceptions. However, under a motion by attorneys for the plaintiff in error to be permitted to amend the assignment of errors which was granted and the amendment made, we are treating the document as complete and considering all the questions presented by the brief. The court certified that the document contained all the evidence introduced at the trial and all the charges given by the Judge.

Chapter 12019, Acts 1927 (Section 4610-4612 C. G. L.) does not cure defects in a transcript of the record which is designed to present to this Court in an orderly and correct manner the record of a judgment for review. It is essential to the complete exercise of appellate jurisdiction that the errors complained of as having been committed by the trial court should be presented to this Court by a properly authenticated transcript of the record. A transaction occurring at the trial should be presented by a duly certified bill of exceptions which under the statute when filed becomes part of the record. But when an attorney will not observe this requirement and seeks to present matters *in pais* by incorporating them in a transcript of the record proper he should see to it that such matters are duly and properly authenticated by a certificate of the trial judge that such matters occurred at the trial. If a motion for a continuance or a motion for a new trial is made, as an illustration, those motions should appear in the bill of exceptions so that they may be duly authenticated by the judge who signs the bill of exceptions. If pretended copies of such motions are placed in the transcript of the record proper without any authentication by the trial judge that such motions were presented as appear in the transcript the appellate court has no means of being correctly informed whether the mo-

tions as copied were in fact made or whether the trial judge considered the same. See Great Am. Ins. Co. v. Suarez, 107 Fla. 705, 146 South. Rep. 644; Mungin v. State, (Fla.) 147 South Rep. 577; Branch v. State, 96 Fla. 307, 118 South. Rep. 13.

It is the duty of the plaintiff in error to make the alleged error of which he complains clearly to appear to the appellate court to which he applies for a reversal of the judgment against him. If he fails to do so the presumption or regularity of the proceedings and the correctness of the judgment obtains and this Court has no power under the Constitution and laws to do otherwise than affirm the judgment. State v. Call, 1 Fla. 92; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Akin v. Morgan, 50 Fla. 173, 39 South. Rep. 534; Thomas v. Price, 56 Fla. 694, 48 South. Rep. 17; Burk v. Clark, 8 Fla. 9; Colson v. State, 51 Fla. 19, 40 South. Rep. 183; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998.

No power exists in this Court to substitute its judgment for that of the trial court upon a carelessly prepared and unauthenticated transcript of alleged proceedings in a duly organized constitutional tribunal of justice, nor has the Legislature the constitutional power to vest such authority in this Court if indeed it attempted to do so by the statute to which reference is made.

The necessity for the observance of rules both in the trial of causes as well as in their presentation to this Court on appeal is apparent to all persons who advocate and realize the necessity for preserving a judicial system designed to produce efficiency, celerity, accuracy and economy in the transaction of judicial business. The criticisms by the laity of our judicial system as an antiquated, cumber-

some and inefficient method for the administration of justice is not because of innate weakness in the system, or lack of ability or character in the judges who labor to the best of their ability with the means and tools at hand to administer justice, but much of the criticism proceeds from an abuse or too careless use of the rules of procedure by litigants or their representatives in the presentation of their cases to the courts.

According to the brief of counsel for plaintiff in error, questions are sought to be presented which could only be brought to this Court by a duly prepared and authenticated bill of exceptions. One of the questions is the propriety of the court's ruling on a motion for a continuance or postponement of the trial to the 18th day of May. The court ordered the cause to be postponed until May 16th. The motion was made on the 15th day of May. Counsel were appointed to defend the accused on the 12th of May. The day before the court had set the trial for the 15th. Counsel waited until the hour set for the beginning of the trial on the 15th of May and then made the motion. It is alleged that sufficient time had not been given them to "interview the defendant's witnesses and therefore have not been able to prepare an affidavit of insolvency in order to have defendant's witnesses subpoenaed at the expense of the County"; also that the "attorneys for the defendant have not had sufficient time to adequately prepare his defense." There is no affidavit in support of the motion; no facts averred from which it might appear that counsel were handicapped by lack of time to prepare the defense. In fact, no effort whatsoever was made to comply with the rule prescribed by authority of law as a protection against abuse of court procedure to obtain the postponement.

The counsel seem to rest their proposition solely upon the fact that two months and four days from the date on which a person kills another, or shoots him down in that intent, is too short a time in which to prepare himself against the day when he may be called to the bar of justice to answer for his assault; or that thirteen days from the date of the indictment is too short a time for a citizen who 'has killed another in which to prepare his defense, or that when he neglects to engage counsel and is dependent upon the goodness and accommodation of members of the bar to volunteer their services in his behalf or act upon the suggestion of the court that four days is too short a time for them to prepare themselves.

There is no authority in law for such a proposition. The Constitution secures to an accused person the right to a speedy and public trial by an impartial jury in the county where the crime was committed and to be heard by himself or counsel or both, etc. Sec. 11, Bill of Rights Const. 1885.

None of those rights were taken from the accused, nor was an impediment to their full and free enjoyment by the accused placed in his way. Counsel's mere statement in their motion that they did not have time to prepare the defense is not sufficient. No facts are given on which to base such a statement, nothing is said as to the character of defense and the complex nature of it that would require more time, nor is anything said about witnesses and what was expected to be established by them, nor that the accused himself depended upon any named witnesses not within the jurisdiction of the court by whom he expected to prove the character of the act by which the life of the woman was taken.

The case is of a serious character because the offense in-

volved is a capital one, and though this Court has no power to determine the question of the guilt of the accused, but has the power only to determine whether the lower court committed error in denying the continuance or the motion for a new trial, we have read the stenographer's report of the evidence and observed that the judge who heard it all and saw the witnesses as they testified and heard the defendant as he gave his version of the transaction declined to allow a new trial and proceeded to adjudicate the guilt of the accused and imposed the extreme penalty.

There is no contention that the court's charge was erroneous, but it is asserted that the evidence is insufficient to support the verdict of murder in the first degree. A discussion of the evidence in detail would serve no useful purpose. A jury determined whether there existed a premeditated intention to kill the deceased on the part of the accused and there was ample evidence to support that finding.

Three men were at a house in Sarasota occupied by two women. One of the men was in a bedroom with one of the women known as Bertie Lee. Two of the men, one of whom was the accused, were in another room with the other woman named Lacy Bell Dyel. The hour was about midnight. A disturbance of some kind arose in the room occupied by the two men and Lacy Bell Dyel. Bertie Lee and the man who was with her, whose name is Douglas, went into the room where the disturbance was occurring, referred to by the witnesses as a "squabble," which means to quarrel noisily, to brawl. When Bertie Lee entered the room she requested the parties to "quiet down." Thereupon Jarvis, the accused, "started shooting" with a pistol, which according to the witness, Douglas, was in Jarvis'

hand when Douglas and the woman, Bertie Lee, entered the room. There were five or six shots fired. The two women were killed, Bertie Lee dying immediately and the other, the Dyel woman, died at the hospital to which she was taken. She was shot in the back, the bullet entering her back under the shoulderblade penetrated her body, cutting one of the intestines, practically severing. it. That wound caused her death.

The testimony of the accused places him in little better position, if any, than the testimony of Douglas. The accused, according to his own story, was quick to shoot down two women when one of the women, according to his statement, "drawed the gun" on him, which he said she had in her hand, but which Douglas said she did not have. After shooting the Dyel woman down he then shot the other one and killed her also. Both of them he shot in the back.

The motion for a new trial on the ground of alleged newly discovered evidence was insufficient under the rule and in substance to warrant a new trial.

We have observed no error in the record, therefore the judgment is hereby affirmed.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.

## ON PETITION FOR REHEARING.

ELLIS, J.—A petition for rehearing was filed in this case in which counsel for the plaintiff in error alleges that this Court in its opinion "overlooked and has not considered certain points raised by plaintiff in error and has overlooked

certain contentions upon authorities cited by him in his brief and argument."

The petition alleges that the errors of this Court consisted in overlooking the fact that the "defendant was arraigned on May 11, 1933, at 4:00 P. M., and his case set for trial on Monday, May 15, 1933, at 9:00 A. M., of said day, and that counsel for the defendant was not appointed for his defense until late in the afternoon of May 12." It is contended that as May 13th was Saturday the first opportunity counsel had in which to ask for a continuance was the following Monday.

The petition alleges that the other error consisted in failing to consider the third assignment of error which rested upon an order at the trial denying the defendant's motion to strike the testimony of the witness, VanGilder.

There is no merit in the petition for rehearing. The opinion states that counsel were appointed on May 12th to defend the accused and that the day before, the court had set the trial for the 15th day of May. The record bears out that statement completely. The record also discloses that the trial was by order set for 9 o'clock A. M. and that at that hour on the day set for the trial counsel submitted the motion for a continuance, which bears out the statement in the opinion that "Counsel waited until the hour set for the beginning of the trial on the 15th day of May and then made the motion."

It is not pointed out why counsel could not have prepared earlier a motion for a postponement of the trial. They were appointed on the 12th day of May. The order setting the trial for the 15th had been made on the 11th of that month. It is not clear why they did not know when appointed that they were unready for trial nor why they could not immediately have stated the fact in writing and lodged

that statement with the clerk or made the statement orally in open court to the judge.

But when the motion for a postponement was finally made it was deficient, as pointed out in the opinion, in all the features which the rule and good practice require to be set forth in such a motion. It cannot be stated correctly as a matter of law that two months after a person has committed an offense is not enough time in which to prepare himself against the day of his trial.

The circumstance of his negligence in securing counsel for his defense or his inability to do so is not a matter which convicts the court of illegal or unseemly haste in compelling him to go to trial within thirteen days after the indictment is returned against him in the absence of any affirmative showing to the court that a trial within such time militates against the constitutional or statutory rights of the accused.

A person accused of crime has no natural or inalienable right to a continuance. At common law such application was addressed to the sound discretion of the court and its decision could not be assigned as error, but now in this State such decisions are reviewable by appellate tribunals, but the ruling of the trial court will not be disturbed in the absence of a clear abuse of discretion. See Hall v. State, 70 Fla. 48, 69 South. Rep. 692; McRae v. State, 62 Fla. 74, 57 South. Rep. 348; Clinton v. State, 53 Fla. 98, 43 South. Rep. 312, 12 Ann. Cas. 150; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385, 8. L. R. A. (N. S.) 509.

As to the testimony of the witness, F. W. VanGilder, a funeral director who testified that he prepared the body of "Bertie Lee" (Clements) for burial and who told of the number of gun shot wounds in the body of the girl; Bertie Lee Clements was the same person described in the opinion as "Bertie Lee." She was shot down at the same

time and place when Lacy Bell Dyel was shot, for whose murder the plaintiff in error was tried and convicted. Counsel moved to strike the testimony of VanGilder upon the ground that it was "immaterial and irrelevant." The motion was denied and the ruling was made the basis of the third assignment of error.

The point, however, was not argued in the brief. A very general and indirect reference was made to the point, however, but it could not be considered as an argument. It was stated that the "evidence introduced by the State was so interwoven that the jury was unable to distinguish and separate the testimony showing the assault upon Bertie Lee Clements and that as to the shooting of the deceased."

In the first opinion this Court treated the assignment of error as abandoned, as indeed under the rules of court it was. An examination of the point, however, reveals ample reason for its abandonment as there is no merit in it.

The record discloses that the killing of the two women was the result of one murderous assault upon them. They were both shot down by the defendant in the same transaction and within the time that the defendant could discharge his pistol. A witness to the transaction could not relate the details of the criminal assault without mentioning the names of the two women who in an instant became the victims of the defendant's savage impulse to take their lives. The undertaker, who prepared the body of Bertie Lee for burial, said there were five wounds in her body made by the entrance and exits of the bullets, one bullet remaining in the body. The killing of Bertie Lee was part of the transaction in which Lacy Bell Dyel was killed. As the trial judge said, it was part of the *res gestae*. It was impossible to omit all reference to Bertie Lee and give a truthful account of the shooting. Both women fell before the

continuous explosions of the defendant's pistol. It was a most unfortunate occurrence, but no comfort can be extracted for the defendant from the circumstances of his killing two women instead of one.

There is no merit in the petition for a rehearing and it is therefore denied.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.