MARTIN F. JARVIS v. L. F. CHAPMAN, as Superintendent of the State Prison.

159 So. 282.
En Banc.
Opinion Filed December 26, 1934.
Petition for Rehearing Denied March 1, 1935.

*Harrison E. Barringer, J. Irvin Walden* and *C. L. Mc-Kaig,* for Petitioner;

*Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant, for Respondent.

ELLIS, J.—Martin F. Jarvis was convicted of the murder in the first degree of Lacy Bell Dyel and sentenced to suffer the penalty of death in Sarasota County, Florida. There was no recommendation to mercy by the jury. To the judgment of conviction and sentence Jarvis took writ of error and the judgment was affirmed by this Court. See Jarvis v. State, 115 Fla. 320, 136 South. Rep. 310.

By reference to the published opinion in that case the details of the horrid tragedy may be read. Lacy Bell Dyel

and another woman, named Bertie Lee Clements, were killed at the same time. They were shot down by Jarvis in the same transaction. After shooting one woman he turned his pistol upon the other. The Clements woman died immediately. Lacy Bell Dyel, for whose murder Jarvis was convicted, died, soon after the shooting, at a hospital. Each woman was shot in the back.

On October 3, 1934, His Excellency the Governor of Florida, issued to L. F. Chapman, Superintendent of the State Prison, and C. B. Pearson, Sheriff of the County of Sarasota, an executive warrant directing them that they cause the execution of the sentence of the court in all respects to be done and performed upon the convicted man. The warrant directed the sentence to be executed in the week beginning October 15, 1934.

On the 18th of October there was filed in this Court, in behalf of Martin F. Jarvis, a petition for writ of habeas corpus in which it was alleged that the petitioner is illegally confined in the "permanent death chamber of the Florida State Prison at Raiford, Union County, Florida," by L. F. Chapman as Superintendent of the Florida State Prison, and on Friday morning, October 19, 1934, the life of the petitioner will be taken "pursuant to said death warrant and without any other authority."

The petition alleged that the Clerk of the Circuit Court for Sarasota County, the county in which the petitioner was convicted, did not comply with the provisions of Section 8428, C. G. L. 1927, which requires the Clerk of the Court of the county, in the event a person is convicted of any crime for which sentence of death shall be awarded against him, to make out, as soon as may be, and deliver to the Sheriff of the county "a certified copy of the whole record of the conviction and sentence." The petition alleges that

the copy of the record of conviction and sentence prepared by the Clerk and delivered to the Sheriff omitted to set forth many matters and transactions which it is alleged the document is required by law to contain.

The law requires the Sheriff to remit forthwith to the Governor the certified copy of the record of the conviction and sentence so delivered to the Sheriff by the Clerk. The statute also provides that the "sentence of death shall not be executed upon such convict until a warrant shall be issued by the Governor, under the seal of the State, with the copy of the record thereto annexed commanding the execution of the sentence of death to be done, and fixing therein some designated week, beginning with Monday, in which week such sentence shall be executed pursuant to such warrant and according to the manner and means hereinafter prescribed."

The manner and means for executing the death sentence are prescribed by Sections 8429, 8430 C. G. L. 1927. Section 8431 C. G. L. requires return of the warrant after punishment of death has been inflicted.

The writ of habeas corpus was issued commanding L. F. Chapman, as Superintendent, to produce Martin F. Jarvis in the City of Tallahassee before the Justices of the Supreme Court instanter and to do and receive what then and there shall be considered and determined concerning the said Jarvis.

The petitioner alleges that the Clerk of the Circuit Court in making out the certified copy of the record of the conviction and sentence, which he delivered to the Sheriff by whom it was transmitted to the Governor as the law directs, omitted therefrom the following documents, namely:

First, the directions to the Clerk of the Circuit Court for

the making up of the transcript of the record pursuant to the writ of error;

Second, the defendant's affidavit of insolvency for the "purpose of appeal";

Third, the order adjudging the petitioner insolvent, which order was recorded in the public records of the county;

Fourth, the amendment to the assignment of errors filed on March 24, 1934, in the Clerk's office.

It is also alleged that there are variances between the "purported whole record" and the "record proper" in the matter of the appointment by the trial court of an attorney to defend the petitioner when he was placed on trial. It is alleged that it appears from the record that the attorneys were appointed on May 11, 1933, when in fact they were not appointed until March 12, 1933, as will be particularly shown by the affidavit of J. Irwin Walden, one of the attorneys.

The petition also attacks the sentence of the court as being void in that it "does not show that it was for the crime for which he (petitioner) had been adjudged guilty."

The petition sets out a copy of the sentence as follows:

"It is the sentence of the Court and the Judgment of the Law That you, Martin F. Jarvis, at such day and time as the Governor of the State of Florida, shall by his warrant appoint, be taken to the State Prison of the State of Florida, and there electrocuted until you are dead, in the manner and form provided by law. And may God have mercy upon your soul."

It is also alleged that the "purported whole record" in the hands of the Respondent Chapman does not show the day, month or year in which the Petitioner was arraigned before trial, nor the true nature of the plea, in that the indorsement on the back of the indictment as appears in the

record would indicate a plea of guilty, while in fact the plea was not guilty; nor does it appear that the indorsement was signed by the Clerk of the Court.

The petition attacks the legality of the conviction of the petitioner on the ground that counsel had not been appointed to defend him prior to his arraignment and they were not allowed sufficient time in which to prepare the defense.

All of this it is claimed is in violation of the Constitution of the United States and the State of Florida; that the death warrant is void because not issued and delivered to the respondent, Chapman, and the Sheriff in accordance with law.

The foregoing statement of the allegations of the petition is full and presents the grounds upon which the petitioner seeks to be discharged from confinement in the "permanent death house" by the respondent, Chapman, and his final discharge from the custody of the Superintendent of the State Prison.

In the first place, the allegation of the petition that the life of the petitioner will be taken "pursuant to said death warrant and without any other authority" is not true in fact nor correct in law. The authority under which the life of the petitioner would have been taken in the circumstances set up in the petition is the judgment of the Circuit Court. The petition alleges that in May, 1933, at a term of the Circuit Court for Sarasota County, the petitioner was "tried and convicted on an indictment charging him with murder in the first degree, and was by the Court adjudged to be guilty of murder in the first degree and sentenced to death by electrocution at the Florida State Prison."

There is no attempt to show that the court was without jurisdiction of the petitioner or the offense as charged. The presumption obtains that the judgment was correct.

Every presumption is in favor of the correctness of the verdict and judgment rendered and entered in the trial court. Clements v. State, 51 Fla. 6, 40 South. Rep. 432; Barber v. State, 52 Fla. 5, 42 South. Rep. 86; Smith v. State, 72 Fla. 449, 73 South. Rep. 354; Stinson v. State, 76 Fla. 421, 80 South. Rep. 506.

If any error of a substantial nature occurred during the trial which would affect the validity of the judgment the burden was upon the petitioner when he took a writ of error from this court to that judgment to make the error to appear. In a review of the case by this court and consideration of a petition by counsel for the plaintiff in error in the case for a rehearing no error was discovered; none was made to appear. So the judgment was affirmed. See Jarvis v. State, *supra.*

Therefore the judgment of conviction and sentence of the convicted person to death by the Circuit Court is the authority of the State expressed and determined by the Court in that judgment and sentence which is the authority for taking the life of the petitioner at the place fixed by law for such executions and at a time designated by the Governor. The executive warrant issued by him and entitled death warrant adds no validity to the court's judgment and sentence and imparts to the judgment no additional authority for the exercise of the sovereign power to take the life of a human being.

The sovereign power of the State acting through its legislative branch commands the death penalty to be inflicted upon persons who have been convicted of capital offenses without recommendation to mercy and who have been adjudged to be guilty by a court of competent jurisdiction and duly sentenced to expiate their guilt by death. When these

facts exist the authority of the State is exercised for the extermination of the life of the convicted person.

The Governor is not required to execute in person or by agent the judgment of the court. The Legislature merely provides by statutory enactment that the court's judgment and sentence of death shall not be carried out until the Governor issues a warrant commanding the execution of the sentence to proceed.

The statute provides that in all cases the court shall award the sentence and fix the punishment or penalty prescribed by law. See Sec. 8416 C. G. L. 1927.

The statute provides that sentence of death shall not be executed upon the convict until a warrant shall be issued by the Governor under the seal of the State with a copy of the record thereunto annexed commanding the execution of the sentence of death to be done and fixing therein some designated week, beginning with Monday, in which week such sentence shall be executed pursuant tu such warrant and according to the manner and means prescribed by the Act. See Sec. 8428 C. G. L. 1927.

The Legislature by statute has fixed the punishment of death for murder in the first degree, see Sec. 7137 C. G. L. 1927, except in cases where a majority of the jury in their verdict shall recommend the person convicted to the mercy of the court, in which case the law provides that the convicted person shall be sentenced to imprisonment for life. See Secs. 8400, 8401 C. G. L. 1927.

The reason for the law requiring the Governor to issue a death warrant before the sentence of the court is executed is not that the Governor's warrant is essential to the validity of the Court's judgment and sentence of the law, but that the operation of the law upon the condemned person shall be stayed until the Governor by his warrant shall

assent. The Constitution provides for pardons and commutations of punishment after conviction in all cases except treason and impeachment. A Board of Pardons is established to exercise that power. The Governor is a member of that Board. A majority of the members of the Board may exercise the power but the Governor is required to be one of such majority. See Section 12, Art. IV, Constitution.

No pardon may be granted unless the Governor assents thereto. The statute therefore provides for an opportunity for the exercise of that power by the Governor and members of the Board of Pardons before the death sentence is executed by requiring the Governor to execute a death warrant. If he declines to interfere there can be no pardon. As the writer stated in Blitch v. Buchanan, 100 Fla. 1202, 131 South. Rep. 151, the Governor's warrant is therefore a negation rather than an affirmation. It is the equivalent of a declaration that he declines to interfere with the execution of the death sentence, that the law shall take its course, the judgment and conviction be executed so far as any power vested in him shall be exercised to the contrary.

The purpose of the Statute, Section 8428, *supra,* in requiring the Clerk to deliver to the Sheriff "a certified copy of the whole record of the conviction and sentence" and which requires the Sheriff to remit the same to the Governor and which requires the Governor to annex it to the death warrant was not for the purpose of enabling the Governor to exercise any fancied power to review the legal accuracy of the court's judgment. The Governor is not an appellate court. He has no power to review the legal sufficiency and accuracy of a court's judgment. The purpose of the statute was, in the abundance of caution, out of consideration for

complete accuracy in so solemn and important a proceeding, to avoid any possibility of error as to the conviction of a person by a court of competent jurisdiction and the identity of the person on whom the sentence was imposed.

The question presented in this proceeding therefore is whether the omission from the certified copy of the whole record, which Section 8428, *supra,* requires the clerk to prepare and deliver to the Sheriff, of the directions to the clerk for making up the transcript of the record for the Supreme Court on the writ of error, the affidavit of insolvency of the person convicted, the order adjudging him insolvent, and the amendment to the assignment of errors are omissions of any part of the "whole record of the conviction and sentence." The transaction above mentioned all occured after the taking of a writ of error to the judgment and conviction. The writ of error transfers the cause to the apellate court. The directions to the Clerk for making up the transcript are for the benefit of the plaintiff that he might upon the record so made up show to the appellate court the existence of substantial error in the rendition of the judgment, so is the assignment of errors, while the affidavit of insolvency is made and the order of his insolvency made solely for his own benefit in placing the burden of costs involved in the writ of error upon the county. They are no part of the record of conviction and sentence.

The assignment of errors is a mere pleading in the appellate court. The instructions to the Clerk for making up the transcript is made by the counsel for the plaintiff in error as above stated pursuant to a rule of court and for his own purpose while the affidavit and order of insolvency are solely for the benefit of the convicted person in shifting the costs of the appellate proceeding to the county in which he can have no cause of complaint.

Such matters do not relate to those guaranties secured by the Constitution to a person charged with crime to a speedy and public trial by an impartial jury in the county where the crime was committed, nor his right to be heard by himself or counsel or both and to demand the nature and cause of the accusation against him and to meet the witnesses face to face and to have compulsory process for the attendance of witnesses in his favor and be furnished with a copy of the indictment against him. Sec. 11, Declaration of Rights, Constitution.

Those matters were all attended to, looked after, considered and secured to the petitioner before and at his trial. And if any such rights had been ignored or denied to him his opportunity was full on the writ of error to make the denial of such rights to appear to the appellate court and obtain a reversal of the judgment. But no such showing was made. The record was examined and the cause considered on the transcript of record brought to the appellate court and no error was discovered. The plaintiff in error was unable to make any substantial error to appear so the judgment was affirmed as above stated.

No purpose of the slightest benefit to the petitioner could be served by including such matters in the certified copy of the whole record of the judgment and conviction which the clerk is required to make up and deliver to the Sheriff after the conviction of the person charged with the crime. Neither are such matters part of the record of the judgment and conviction.

The presence of the matters mentioned are merely required to be included in the transcript of the record when the case is brought to the appellate court. Not that they have any bearing upon the judgment and sentence but in the

matter of assignment of errors and directions to the clerk for convenience of the court in disposing of the case.

The phrase, "record of conviction and sentence," is a technical one and was used in the statute of 1868, Chapter 1637, Sub.-Ch. 13, in the common law meaning of the term. Evidently there was some misunderstanding on the part of the lawyers and legislators of the time as to what constituted "conviction" of a felony, whether the verdict of the jury alone was conviction, or whether it required also a judgment of the court and sentence. Blackstone speaks of the verdict of a jury upon a plea of not guilty as constituting the conviction. See 4 Bl. Com. 362. "After trial and conviction, the judgment of the court regularly follows, unless suspended or arrested by some intervening circumstance, of which the principal is the *benefit of clergy.*" 4 Bl. Com. 365.

In the days of which Blackstone wrote a person convicted of a heinous crime like murder was attainted, but that occurred after judgment, so it was pointed out that there was a difference between a man "convicted" and "attainted," which latter came after judgment. Before judgment there was always the possibility of something being offered in arrest of judgment. The indictment might be erroneous which would render guilt uncertain and the present conviction quashed, or he might be granted a pardon or obtain the benefit of clergy. 4 Bl. Com. 380, 381. But bills of attainder were abolished by the Constitution of 1868, and prior Constitutions. See Sec. 17, Declaration of Rights, Constitution.

So it was probably doubtful if the phrase "record of conviction" included the judgment, or whether it became necessary to subjoin the word "sentence" which should follow

the judgment. See Commonwealth v. Lockwood, 109 Mass. 323, for a full discussion of the subject.

This Court has held that judgment must expressly adjudicate guilt, and the sentence should follow. State, *ex rel.* Owens, v. Barnes, 24 Fla. 153, 4 South Rep. 560; Ellis v. State, 100 Fla. 27, 129 South. Rep. 106, 69 A. L. R. 783; Chapman v. Parish, 114 Fla. 612, 154 South. Rep. 334; Lake v. McClelland, 101 Fla. 536, 134 South. Rep. 522.

While a judgment of the Circuit Court is presumed to be regular and valid, it was said in Watson v. Jones, 41 Fla. 241, 25 South. Rep. 678, "Presumptions are, from necessity and upon grounds of public policy, indulged to support judgments of courts of general jurisdiction where the record does not disclose that the court had no jurisdiction; but it would not only be unnecessary, but extremely dangerous, to indulge such presumptions where only a part of the whole of an accessible record is offered, and especially where, as in this case, the parts offered did not affirmatively show jurisdiction."

In the case of Norwood v. State, 80 Fla. 613, 86 South. Rep. 506, we referred to the whole record of the first judgment of conviction.

In framing the statute therefore it was probably deemed wise in the matter of a death sentence, which, as Blackstone said, "is the most terrible and highest judgment in the laws," that the clerk should prepare a certified copy of the "whole record of the conviction and sentence" which would place before the Chief Executive every matter necessary to show the jurisdiction of the court, the existence of an indictment, the plea of guilty, or not guilty, the verdict of the jury, the judgment of guilt and sentence pronounced by the court, and in case of writ of error from the Supreme Court to the judgment of conviction and affirmance of such judg-

ment by the appellate court, a copy of the mandate from the Supreme Court. Such a record would satisfy every requirement for certainty to a high degree so necessary in the carrying out of the "most terrible and highest judgment of the law."

The word "whole" adds no force to the phrase "record of the conviction and sentence" because the "record of the conviction and sentence" is complete within itself showing the existence of a cause of action, in this case an indictment, the plea of the accused, the jurisdiction of the court, the verdict of the jury and the judgment and sentence of the court. These are the essential elements of the record proper.

Much discussion arose in this State in former years as to what was necessary to be shown in a case to establish the existence of a judgment. It seemed to have been agreed that in case of a judgment in a court of general jurisdiction a certified copy of the judgment was sufficient but in a court of limited jurisdiction enough should appear from the copy of the record to show that the court had jurisdiction of the person and subject matter. See McGehee v. Wilkins, 31 Fla. 83, 12 South. Rep. 228; Clem v. Meserole, 44 Fla. 234, 32 South. Rep. 815.

In the latter case Mr. Justice MABRY wrote a dissenting opinion in which he discussed the question fully and with much force.

The requirements of the statute are, as has been stated, to place in the hands of the Chief Executive record evidence of the judgment and sentence of the person condemned to death, and that such evidence should be complete the law requires a "certified copy of the whole record of the conviction and sentence" of the condemned person. Matters transpiring after the conviction have no relation whatsoever to the "conviction and sentence" except as they

may constitute an attack by way of appellate proceedings upon the judgment. They afford no evidence to the Chief Executive as to any matter about which he is concerned nor as to which the condemned person may be heard to protest. Whatever of that nature exists he has presumably fully used and profited by in the appellate proceeding about the regularity and effectiveness of which the Governor as such is in no wise concerned. When the time arrives for him to declare whether he will exercise the power to pardon, as vested in him by the Constitution, or permit the execution of the criminal to proceed he first satisfies himself from the certified copy of the record of all matters which conclusively show jurisdiction by the court of the subject matter, the identity of the person convicted and the conviction or judgment and sentence and mandate from the Supreme Court showing the affirmance of the judgment where writ of error is taken.

The phrase "whole record of the conviction and sentence" as used in the statute, Sec. 8428, *supra,* means the "record proper" meaning the record of those elements necessary to show the existence of a valid judgment in law without the aid of any presumptions of regularity and correctness. See 16 C. J. 1319.

Whether the defendant even in such matters has any right to be heard is very doubtful. He has had his day in court, every constitutional right to a speedy and public trial by an impartial jury in the county where the crime has been committed, all his constitutional guaranties both State and Federal have been secured to him and he has been afforded the opportunity to have the trial and all the proceedings from the regularity of the indictment to the sufficiency of the evidence to suport the conviction reviewed by an appellate court. Nothing remains but the execution of the sentence

upon the consent of the Governor as evidenced by the executive warrant. See State v. Haddox, 50 W. Va. 222, 40 S. E. Rep. 387.

The defendant is not entitled to be present when the warrant fixing the time and place of his execution is issued. People v. Flannelly, 128 Cal. 83, 60 Pac. Rep. 670.

After sentence of death has been passed on the convicted person his trial is at an end and he has no right to be present at the further ministerial step necessary to carry into execution such sentence. 16 C. J. 1331.

The proceedings prescribed by our statutes relating to the execution of a judgment and sentence of death upon the convicted person is an evolution from the common law proceedings at which it was the practice for the Judge who pronounced sentence to issue a precept under his hand and seal called a warrant of execution directing execution to be done. 4 Bl. Com. 403.

Later it was established that the judges might command execution to be done without any writ; that a calendar under the hand of the justice who sat in the case was sufficient. In the course of things the officer who brought the prisoner to the bar was the person to do the execution. From this resulted the common law practice of dispensing with either writ or calendar. The open pronouncing and entering of judgment was a sufficient warrant of execution and the officer having custody of the prisoner was required to inflict the punishment with no authority or command other that that contained in the "record of the sentence" unless something therein or the nature of a case, or an order from the judge precluded. But if the execution was to be done by some officer other than the one having custody of the prisoner the reason for dispensing with a warrant or command had no application and it became necessary to

issue a special command to the officer to do the execution and something to effect a transfer of the custody of the prisoner. It was the judgment which empowered the officer to execute and this was evidenced by the record. See 16 C. J. 1330.

In this State the warrant is issued by the Governor upon a certified copy of the whole record of the conviction and sentence. No statute requires the defendant to be present when the Governor fixes the date of the execution of the sentence. He, as said in State v. Haddox, *supra,* has had his trial, been convicted and sentenced to death. All that remains to be done is to fix the time and carry the execution into effect. Whether it be long or short, on one date or another, is for the law to fix, the convicted person having forfeited his life by his criminal conduct is permitted no voice in the matter. Such ministerial duties have nothing to do with the trial. To literally quote the language of the Supreme Court of West Virginia, the convicted person "is as though dead insofar as his legal rights are concerned, for his own conduct has destroyed them all."

Other matters alleged in the petition as to appointment of counsel to defend the petitioner and the lack of sufficient time in which to prepare the defense for him and his arraignment before counsel had been appointed to defend him were or might have been subject to discussion on the writ of error which was taken by the petitioner to the judgment. They were presented and argued before this Court and considered as possessing no merit. The judgment was affirmed.

We have considered this petition fully. Not because there appeared to be any merit in the points urged for the petitioner's release, nor any ground for interfering with the duties of the Governor on whom alone the duty rested to satisfy himself from the certified copy of the record sub-

mitted to him that the petitioner was tried upon an indictment by a court having jurisdiction and was convicted and sentenced to death and was the same person on whom the sentence of death was pronounced, but because, as in all such cases, the sentence of death is the most terrible and highest judgment of the law we desired that a full hearing should be given in order that the apparent confusion which has arisen as to the fullness required of the certified copy of the record furnished to the Governor and the petitioner's asserted right in regard thereto may be settled.

We hold that he has no rights in regard to it. It is merely a ministerial function as to the carrying out of the sentence pronounced upon the petitioner. His legal rights are ended so far as that judgment is involved. He has no voice as to the day he is to be executed nor when the executive warrant shall issue, nor whether the certified copy of the record supplied to the Governor contains matters or does not contain matters that do not relate to the record proper which is designed to show only that the court pronouncing the sentence had jurisdiction of the person and crime, that there was a trial, verdict and judgment and sentence and in case of appellate proceeding a copy of the mandate from the appellate court.

The return of the Superintendent of the State Prison to the writ of habeas corpus shows all of the essential elements of the record of conviction and sentence of the petitioner. It shows the executive Death Warrant duly signed by the Governor and attested by the Secretary of State under the great seal of the State; the minutes of the term of the Court for Sarasota County relating to the organizing and impaneling of the grand jury; the presentment of the indictment against the petitioner charging him with murder in the first degree; the copy of the indictment; the appoint-

ment of counsel to defend the accused; the impaneling of a petit jury; the motion for a continuance and the order made by the court on it; the plea of not guilty; the verdict by the jury; the motion for a new trial and the order made by the court; the judgment of the court adjudging the petitioner guilty of murder in the first degree and sentence of death; the writ of error from the Supreme Court; the testimony taken at the trial; the charge of the court and the mandate from the Supreme Court showing the affirmance of this Court of the judgment of conviction and sentence and commanding the Circuit Judge to take such further proceedings in the cause as according to right and justice the judgment of the Supreme Court and the laws of Florida ought to be taken; all of which was under the certificate of the Clerk of the Court and the seal of the Court.

The judgment was sufficient in its terms as to form and certainty of language. See Ferguson v. State, 90 Fla. 105, 105 South. Rep. 840.

The petition for the writ of habeas corpus presents no legal reason why the sentence of the law and judgment of the court should not be executed nor any meritorious ground upon which it can be said that the petitioner is illegally restrained of his liberty or that his detention by the respondent for the purpose of executing the judgment of the court is in any wise unlawful or not in conformity with the due processes of the law in such cases provided.

The petitioner is remanded to the custody of the respondent, L. F. Chapman, as Superintendent of the State Prison of the State of Florida, subject to Executive action under the statute for the execution of the judgment and sentence.

Davis, C. J., and Whitfield, Terrell, Brown and Buford, J. J., concur.

ON APPLICATION FOR WRIT OF ERROR CORAM NOBIS.

PER CURIAM.—In this case a reference to the testimony of the accused, Martin F. Jarvis, given by him as a witness at his trial, as shown by the transcript on the original appeal, of which we take judicial notice upon the application for leave to file in the court below a petition for writ of error *coram nobis,* negatives the basis upon which the petition for writ of error *coram nobis* is now made to rest, in that it shows that accused interposed a plea of self-defense and deliberately admitted on the witness stand that he consciously shot his two female victims, one in the back as she stooped over, after which he carefully planned his escape and did escape after rearming himself with another weapon, whereas in his present application for leave to present a petition for writ of error *coram nobis,* petitioner claims he was too drunk at the time of the homicides to entertain a premeditated design to kill the woman for whose murder he has been convicted and sentenced to death and the conviction heretofore affirmed in Jarvis v. State, 115 Fla. 321, 156 Sou. Rep. 310.

Leave to apply for writ of error *coram nobis* denied.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.