JOHN DIEHL v. STATE.

158 So. 504.
Division A.
Opinion Filed January 2, 1935.

*George A. Worley,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General and *Roy Campbell,* Assistant, for the State.

*Fred Botts,* as *Amicus Curiae.*

ELLIS, J.—On the 3rd day of July, 1933, Marie Antoinette Carey, about thirteen years of age, was killed near the City of Miami, Florida, by an automobile driven by John Diehl.

The little girl, in company with another about her age, had placed a table about six feet south of Sixty-Second Street, N. W., and near its intersection with Seventh Ave-

nue. The girls were engaged in selling fireworks and used the table on which to display their goods.

The automobile, which was driven by Diehl, approached on Sixty-Second Street from the west traveling at a speed of about forty-five or fifty miles an hour. The time of day was between four-thirty and five o'clock in the afternoon. About ninety-five feet west from the fireworks stand the automobile struck a "trailer," presumably a small vehicle of the kind sometimes attached to the rear of an automobile and used to carry small parcels. No clear description of the trailer is given in the record. After striking it the automobile proceeded along the south side of the road a short distance, crossed the curbing of the street to the land immediately adjacent, struck the little girl, demolished the table, collided with a cement or rock column about four feet square, demolished that and collided with a telephone pole. The driver of the car was thrown to the ground. Some of the persons who witnessed the tragedy or were near went immediately to the wrecked automobile, others to the body of the little girl nearby. The child was killed. The driver of the automobile was unconscious. The odor of whiskey was strong on his breath. He was taken to a hospital and recovered from his injuries.

On the 10th day of July, a week later, an information was filed in the Criminal Court of Record for Dade County against Diehl, charging him with the killing of the child by an act of culpable negligence constituting manslaughter under the statute. See Section 7141 C. G. L. 1927 (Sec. 5029 R. G. S. 1920).

After entering a plea of not guilty the accused was placed on trial on July 14th and convicted of the offense charged and sentenced to confinement at hard labor in the State penitentiary. To that judgment he took a writ of error and assigned forty-seven errors, on which he seeks a reversal

of the judgment. The brief filed in behalf of the plaintiff in error treats of nine questions which counsel maintain are involved in the case.

The first relates to the sufficiency of the information. It is contended that the allegations of the information are not sufficiently clear as to the manner in which the wounds were inflicted upon the deceased to sufficiently "inform the defendant as to nature of the charge, and so as not to mislead or embarrass him."

The point was raised by a motion to quash the information, three of the grounds of which were framed in general terms alleging vagueness and uncertainty and that the information charged no offense. The fourth ground alleges that the information does not allege that the "defendant inflicted mortal wounds in or upon the body of the deceased by any direct averment, but merely by way of recital."

The case of Kauz v. State, 98 Fla. 687, 124 South. Rep. 177, cited by counsel in support of the point has no bearing upon it. The judgment was reversed because Kauz having been charged with a dependent offense in the mode of the common law and the persons charged as principals not having been convicted but on the contrary their plea of guilty having been withdrawn and a *nolle prosequi* entered by the county solicitor no judgment of conviction could be pronounced against them it was held that no valid judgment of conviction could be entered against Kauz.

The information in this case charged Diehl with the offense of manslaughter in the following language:

"The said John Diehl did then and there drive and operate unlawfully, carelessly, recklessly, and with culpable negligence, and with a reckless disregard for the life and safety of others, at a rate of speed greater than was reasonable and proper, having regard to the width, traffic and use of said highway, and so as to endanger the life and limb of persons

using the said highway and did then and there, by his act, procurement, and culpable negligence as aforesaid, drive and operate and ride the said motor vehicle upon, in, against and over the body of the said Marie Antoinette Carey, then and there inflicting on, in and upon the body of the said Marie Antoinette Carey mortal wounds, a further and more particular description of said mortal wounds being to the county solicitor unknown, of and from which said mortal wounds the said Marie Antoinette Carey did then and there die."

The criticism of this language is grammatical rather than legal. Exception is taken to the phrase "then and there inflicting," which counsel contends shows "no connection between the alleged culpable negligence with the inflicting of the mortal wounds"; that if the word "thereby" had been used instead of the phrase next above quoted "possibly it would have been sufficient."

The test of the sufficiency of an information or indictment as to certainty and definiteness is whether the language is so vague, inconsistent and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense. See Barineau v. State, 71 Fla. 598, 72 South. Rep. 179; Disney v. State, 72 Fla. 492, 73 South. Rep. 598; Barrentine v. State, 72 Fla. 1, 72 South. Rep. 280.

In the latter case the doctrine was repeated that: "It is the declared policy of the Legislature, as well as of this court, to uphold indictments and informations whenever there has been a substantial compliance therein with the statutory requirements."

The information is sufficiently clear in setting forth the manner of the death of the child, that is to say, the particular mode by which the death was caused. It is charged

that the accused recklessly and with culpable negligence and in disregard of the life of others, drove the motor vehicle upon, against and over the body of the child, then and there inflicting upon her body mortal wounds of and from which she died. The use of the present participle of the verb inflict does not plunge the entire allegation into an inconsistent or doubtful statement as to the manner of the child's death. The word shares the construction of the verb from which it is derived and has the meaning in the connection used of causing the wounds upon the child by driving the automobile upon her.

The information may not attain to the degree of certainty required in a dilatory plea such as a plea in abatement, but it is not so vague and inconsistent as to have endangered the accused by another prosecution for the same offense or to have embarrassed him in the preparation of his defense.

The motion to quash was therefore properly overruled.

The next question is, was the accused allowed a reasonable time in the circumstances for the preparation of his defense. The point was presented in the trial court by a motion for a continuance. The motion was supported by the affidavit of the accused which implies that some of the facts set forth were made on information and belief which the affiant believes to be true and that he does not believe that he could safely go to trial because he has not had sufficient time to prepare his defense. The offense of which he was accused occurred on July 3, 1933. The information was filed on July 10th, seven days later. He was arraigned and brought to trial on the 14th of the same month. It was alleged that the accused was also injured in the transaction in which the child was killed; that as a result of his injuries he had been up to the time of his motion confined in the hospital ward of the Dade County jail and has been in such a "physical and mental condition that he has been unable to properly confer

with his counsel and make preparation for his defense."
There are no allegations of fact to sustain the statement
that either his mental or physical condition precluded him
from properly conferring with his counsel or that he had
made any effort to engage one between the time of his re-
gaining consciousness and the date on which he was ar-
raigned upon the information.

It was alleged that he was detained in jail and denied bail,
but it is not shown how that fact precluded either the en-
gagement of counsel by him or the preparation of his de-
fense, neither is it alleged that his counsel, if he had engaged
one, was deprived of reasonable opportunities to confer
with him. The affidavit contains a lengthy statement to
the effect that shortly before the accident he had allowed
a stranger to enter the automobile and had permitted him
to drive it for awhile; that the strange person managed in
some way to "drug or otherwise cause this defendant to
become in an unconscious condition for the purpose of rob-
bery" as the affiant believed. The statement was based
upon the fact, as alleged in the motion, "that certain val-
uable personal property was taken from his possession either
before or immediately after the accident above referred to."

The affidavit alleges that if the cause should be contin-
ued he believed he could furnish bail acceptable to the sheriff
and could "find persons who will appear as witnesses in his
behalf to testify to the facts of seeing this defendant riding
in, but not driving, said automobile prior to the accident,
and he believes he can find persons present at the scene of
said accident who will testify that he or she or they saw
a person other than this defendant get out of said automo-
bile and run away from the scene of said accident."

There is no statement as to the source of his informa-
tion that any person would testify that he or she saw an-
other person other than the defendant leave the car when

it stopped after the accident. Whether a person was in the vehicle prior to the accident is scarcely material, particularly as no statement is made showing how long prior to the accident such unknown person was in the automble. That some person who was present and witnessed the accident might possibly be found who would swear that he or she saw some one get out of the car and go away is purely speculative.

Reduced to the facts definitely alleged to be true, the motion for continuance seems to rest upon the theory that ten days after the commission of an offense such as was charged is too short a time within which to place one on trial for committing it. In certain circumstances that proposition may well be true, but those circumstances should be distinctly alleged which, existing, deprive the accused of an opportunity for preparing his defense. The requirement cannot be supplied by argument or inference.

The rule has been long established in this State that applications for continuances in criminal cases should be examined more closely than in civil cases on account of the superior temptation to delay. See Adams v. State, 56 Fla. 1, 48 South. Rep. 219; Hagan v. State, 66 Fla. 268, 63 South. Rep. 443; Walker v. State, 93 Fla. 1069, 113 South. Rep. 96; Whitman v. State, 97 Fla. 988, 122 South. Rep. 567; Bryant v. State, 34 Fla. 291, 16 South, Rep. 177; Hall v. State, 70 Fla. 48, 69 South. Rep. 692; Jacques v. State, 86 Fla. 137, 97 South. Rep. 380; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385; 8 L. R. A. (N. S.) 509.

It is also true that applications for continuance are addressed to the sound discretion of the court. See Maddox v. State, 69 Fla. 695, 69 South. Rep. 20; Clinton v. State, 53 Fla. 98, 43 South. Rep. 312; 12 Ann. Cas. 150; Webster v. State, 47 Fla. 108, 36 South. Rep. 584; Ballard v. State, 31 Fla. 266, 12 South. Rep. 865; Williams v. State, 53

Fla. 89, 43 South. Rep. 428; Hagan v. State, 66 Fla. 268, 63 South. Rep. 443; Jerry v. State, 99 Fla. 1330, 128 South. Rep. 807; Ward v. State, 83 Fla. 311, 91 South. Rep. 189.

Such discretion will not be interfered with in the absence of palpable abuse. Ward v. State, *supra;* Yarborough v. State, 94 Fla. 143, 114 South. Rep. 237; Hall v. State, *supra;* Maddox v. State, *supra;* Brown v. State, 88 Fla. 457, 102 South. Rep. 546.

The application fails to show where and how information was obtained that an unknown person left the automobile when it collided with the concrete column and telegraph pole, nor were any persons named who could so testify, nor that any effort was made to secure the attendance of such witnesses at the time the application was made, nor that such witnesses reside within the jurisdiction of the court; that the testimony cannot be given by any available witness. See Moore v. State, 59 Fla. 23, 52 South. Rep. 971; Brown v. State, *supra.*

It was held in the case of McDowell v. State, 110 Fla. 404, 149 South. Rep. 53, that where a person was charged with a capital offense and the defense was intoxication that requiring him to go to trial seven days after the date of the offense was not error. The court, speaking through Mr. Justice BUFORD, said that "subsequent events during the progress of the trial showed that in this particular case no harmful error was committed by denying the motion for a continuance."

The same observation may be very appropriately made in this case. The able counsel for the accused took every step and made every defense available to completely present the case. See also Jarvis v. State, 115 Fla. 321, 156 South. Rep. 310.

There was no error in denying the motion for a continuance.

The third question is based upon a challenge to the array of trial jurors and challenges for cause to individual jurors. The names of nine persons are given in the written challenge to the array from whom it was stated that a jury would be selected to try the accused. It is alleged that these men were selected and summoned to appear for jury service and duty for the week commencing July 2, 1933; that they appeared and served on the 5th and 6th days of July. One of the persons named served one day during that week; three did not serve at all. Of those named in the challenge to the array three served on the jury; W. L. Roberts, J. T. Blackman and F. E. Yost. Of these, Roberts said he served one day; Yost did not serve, and Blackman was not called to swear on his *voir dire*.

It appears from a statement made by the court that the jurors who were summoned for the previous week did not serve two days; that one or more of them served only one day; that there "was no court the second day and it was just held over until the present day on account of the illness of the judge."

The record discloses that on the 29th day of June, 1933, general and special venires were issued for jurors to serve returnable to July 5, 1933, which was Wednesday of that week. Some of them served on the 5th day of July. The statement of the judge above quoted means that those summoned and not excused were required to return the following week for jury service because of the illness of the judge which precluded him from carrying on the business of the court for the week in which the persons were called to serve. On the twelfth of July another venire was issued returnable to the thirteenth of July. The jury was composed of four men who had been summoned for service as jurors the week before and two were from the venire issued for the week in which the accused was tried. The point is raised by as-

signments of error numbered from three to eleven inclusive. It appears that the accused exhausted all his peremptory challenges.

The point presented here is that a person who is drawn to serve as a juror at a term of the Criminal Court of Record pursuant to the requirements of Chapter 13675, Laws of 1929, is not qualified to serve during a week subsequent to that at the same term in which he was required to appear. Stated differently, it is contended that a person drawn to serve as a juror in the criminal court for one week is disqualified to serve the following week during the same term, notwithstanding on account of the judge's illness the juror was excused and required to appear for service during the week following that for which he was drawn.

The point rests upon the construction which counsel place on the language of Section 4457, C. G. L. 1927. That section provides that the judge of the court may each week draw in the manner prescribed in Section 4455 C. G. L. the names of eighteen persons to serve as petit jurors for succeeding weeks as long as the court shall remain in session; that the court shall have power to hold any juror over beyond the end of the week for which he was drawn if such juror is engaged in the trial of a cause in which no verdict has been rendered. The section then provides that "No person shall be drawn to serve on a petit jury more than once during the same calendar year."

It does not appear that either one of the jurors who served in the case had been drawn to serve on a petit jury more than once during the year. Some of them were drawn to serve during one week and some of them having served one day all were required to appear the following week because of the illness of the judge which precluded their further service during the week for which they were drawn.

This court has held that the statute prior to the Act of

1909, Chapter 5901, did not work a disqualification; that it simply provided an exemption.[1] See Blount v. State, 30 Fla. 287, 11 South. Rep. 547; Lambright v. State, 34 Fla. 564, 16 South. Rep. 582; Yates v. State, 43 Fla. 177, 29 South. Rep. 965.

In the case of Dedge v. State, 68 Fla. 240, 67 South. Rep. 43, decided in 1914, it was held that previous jury service within the year was a disqualification and not a personal privilege as the statute was when the case of Yates v. State, *supra,* was decided. The Dedge case was evidently decided under Chapter 5902, Laws 1909, which provided that: "It shall be grounds of challenge for cause if any person called as a juror has served as a juror at any other term within one year." The Yates case was decided in 1901. Yates was tried in Duval County in July, 1900.

The language in the Dedge case is that "Previous jury service within the year is now a disqualification." The statute, Chapter 5902, *supra,* provides that service by one as a juror at any other term within one year "shall be grounds of challenge for cause."

In the case of Marks v. State, 115 Fla. 497, 155 South. Rep. 727, the point was raised on a peremptory challenge to jurors on the ground that such jurors had served during a previous week of the same term of court. The court used the following language:

Our construction of the several sections of our statutes relating to the drawing of jurors for petit jury service during a certain week is that the judge of the court has no power to hold any juror over beyond the end of the week for which he was drawn unless such juror is engaged in the trial of a case in which no verdict has been rendered. This is necessarily implied from the statute, which affirmatively provides that a juror may be held over beyond the

week if he is engaged in the trial of a case in which no verdict has been rendered."

Now in this case two of the jurors served the week before; two did not serve the week before, although they were drawn to serve during that week.

While a challenge to the array based on the disqualification of any jurors less than the entire panel would not be the proper course to pursue to attack the disqualification of such jurors and certainly not the proper course to exercise the right to a peremptory challenge for cause, yet in this case the question was presented by both a challenge to the array and by challenge for cause addressed to the jurors who served the week before as well as those who were drawn to serve but did not actually serve.

The members of the court agree that in this case both the case of Dedge v. State, *supra,* and Marks v. State, *supra,* shall not be overruled. So the conclusion is that the judgment shall be reversed on the points raised on the third question as above stated on the authority of the two cases above mentioned.

The judgment is reversed.

Davis, C. J., and Terrell, J., concur.

Whitfield, P. J., and Brown and Buford, J. J., concur in the opinion and judgment.