Cleo C. Wadsworth v. State.

186 So. 435.

Division A.

Opinion Filed January 20, 1939.

Rehearing Denied February 17, 1939.

*Davis & Davis,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

THOMAS, J.—Taking the questions involved in the order in which they have been presented by counsel for the State and for the defendant, we will first discuss the one whether the trial court erred in denying the motion of the defendant for a change of venue.

Under the statute, Sec. 4337 of the Compiled General Laws of Florida, the party to a civil cause or a defendant in a criminal case wishing a change of venue shall apply under oath stating that he fears "he will not receive a fair trial" on account of the influence of the adverse party "over the minds of the inhabitants of the county," or because the applicant is "odious to the inhabitants of the county." Among other requisites is the one that the facts on which the change of venue is based shall be given fully and the application must not only be certified by counsel but also supported by affidavits of at least two reputable citizens not of kin to the defendant or his counsel.

Under the law, Sec. 4340 C. G. L., the adverse party has the right to traverse the allegations of the application, and it is the duty of the court to hear the evidence produced by either party to the controversy.

In this case the defendant presented his motion for change of venue, stating that he had "reasonable ground to fear that it will be impracticable to obtain a qualified jury for the trial" of his case; that he and nine other defendants were charged with the commission of the offense, one of whom had entered a plea of guilty and several of whom had made confessions implicating the applicant, all of which was "common knowledge to every citizen * * * or practically every citizen qualified for jury service" in the county.

The defendant further set out that the deceased was murdered by a mob, which had resulted in widespread discussion of the case, and that unless he was given the change of venue he would be deprived of his right to trial by a fair jury. This application was substantiated by four persons who swore that the facts in it were true and that they believed it *"impracticable* to secure a qualified jury to serve in the case."

The statement in the defendant's application and in the supporting affidavits that it would be impracticable to obtain a jury within the county to render a fair and impartial verdict hardly complied with the requirements of the statute that it be shown that the defendant was so odious to the inhabitants of the community that he could not receive a fair trial.

It appears from the record that a venire was issued for one hundred jurors, seventy-five of whom reported and twenty-eight of whom were excused from service by the court. This left forty-seven in attendance. From the latter number, twelve were selected to try the case. In his order the Judge provided that "If it should appear during the selection of a jury that a change of venue would serve the ends of justice, the Court will give due consideration to any motion for such change." The motion for such change was not renewed. We are unable to determine the number of challenges for cause, or the number excused in the exercise of peremptory challenges, but the fact remains that out of forty-seven men, twelve were found who were sworn in chief to pass upon the issues involved.

It is the law of the State, and is conceded by counsel for the defendant, that a motion for change of venue is addressed to the sound discretion of the trial court and we are but repeating when we say that such a ruling will not be disturbed unless it appears that the court was unfair in

its ruling and "was guilty of a palpable abuse of discretion." See Jeffcoat v. State, 103 Fla. 466, 138 South. Rep. 385, and authorities therein cited.

In Jeffcoat v. State, *supra,* it is true that several witnesses, introduced by the State in opposition to the motion for change of venue, were examined in open court but this was in response to a showing that articles had been published in newspapers of three cities, purporting to give the evidence and defendant's confession. The motion was supported, too, by thirty-four affidavits setting forth that because of the activities of a justice of the peace the public had become hostile to the defendant.

Here the motion for change of venue has appended an affidavit signed by four persons, and the State replied in kind by filing ten separate ones subscribed by men residing in eight different precincts, from various walks of life, and who had lived in the county for periods ranging from two to fifty-eight years.

We believe the Circuit Judge cannot be charged with any abuse of discretion in denying the application to change the place of the trial.

We reach the next question upon which we are asked to pass, namely, was the court in error in denying the motion for continuance?

In substance the motion, signed and acknowledged by Mr. A. C. Johnson, who had been appointed by the court because of defendant's insolvency, averred that counsel had been engaged in the actual trial of other cases every day since his designation to represent accused and had been unable therefore to "investigate the authorities, together with the evidence" which the defendant would produce at the trial.

It seems fundamental that a defendant shall be given time to prepare his defense and we will add nothing to this

exposition of the law as it was so ably and eloquently expressed by Mr. Justice Ellis in the case of Coker v. State, appearing in 82 Fla. 5, 89 South. Rep. 222, however the facts in the instant controversy are not analogous to those which inspired Mr. Justice Ellis' remarks.

The rules by which we are governed in determining whether error was committed by the trial judge are: first, the conclusion must be based on the facts in this particular case; and, second, abuse of discretion must be clearly shown. Moore v. State, 59 Fla. 23, 52 South. Rep. 971.

The chronology of the procedure, beginning with the finding of the indictment and ending with the trial, follows: The defendant was indicted November tenth. Counsel was appointed by the Court November seventeenth. On the same day it was agreed that trial would begin November twenty-third. On the latter day the motion for continuance was filed and denied. The trial commenced November twenty-third and was concluded on the twenty-sixth.

. We are convinced that the time which elapsed between the finding of the indictment or even the appointment of counsel and the trial is but a circumstance in deciding whether the defendant was given such a speedy trial that injustice resulted.

The record discloses not the slightest reflection on the ability of the attorneys or their zeal in protecting every right to which the defendant was entitled. The lawyer appointed by the court was assisted in the trial by another who in his home county was assistant solicitor. In defendant's behalf was filed the motion for change of venue. When accomplices were called as witnesses for the State the jury were, in each case upon motion of counsel, warned to receive the testimony with caution. Instructions were prepared and requested by the defendant's counsel and witnesses thoroughly examined by them. In the course of the

inquiry only four persons were named by defendant as having seen him after he left home the night of the murder and who did not testify, two co-defendants and two men at Mayo in an adjoining county.

A. perusal of the record leads us to determine that no abuse of discretion occurred in the denial of the motion for continuance.

We will discuss the third, fourth and fifth questions together because the argument is to some degree appropriate to all of them.

It is strenuously urged that no basis can be found in the indictment or evidence to justify the instruction that when two or more persons conspire to commit an unlawful act, each is responsible for such results as could have been foreseen, even though the particular result was not intended.

The State elected to go to trial on the first, second and seventh counts of the indictment. The first charged the defendant and others with assaulting and killing the deceased; the second and seventh alleged that the defendant and one other committed the murder, and that the remaining defendants were aiders and abetters.

We think that the jury could not have been confused by the instruction even though it might be considered irrelevant to the facts and we cannot offer encouragement to the position that defendant was prejudiced because he was held responsible for a death resulting from a conspiracy where he had part in the former but was innocent of the latter.

The evidence which the jury had a right to, and obviously did, believe was that Cleo C. Wadsworth and seven others, including Robert M. Morrison and Stafford Crews, congregated and left in a car for Mayo to call on Ozzie O. Hurst, a resident of their neighborhood, at Luraville in Suwannee County, to make him account to them for cer-

tain misdeeds. Upon reaching Mayo, whence Hurst had gone with his family to attend a show, they learned that Hurst had left to return to his home. In Mayo the defendant and his companions had temporarily exchanged their truck for a larger one and all set out in pursuit of Hurst. On a narrow clay road they overtook him, and made him drive his car out of the road whereupon they drove alongside and stopped within a few feet of the Hurst car. The members of the party, with the exception of the driver, were standing in the back of the truck, one, Crews, with a flashlight, and two others, defendant and Morrison, with pistol and shot gun, respectively. While Crews held the light the other two fired point-blank at Hurst, killing him.

With Hurst on the front seat of his car were his wife, a little girl and baby, and on the back seat a woman and three children, aged four, six and nine. The small girl on the front seat was wounded and jumped or fell from the car. The women and children screamed, whereupon the defendant and his associates fled, leaving a man murdered and his distressed family beside the road.

One could hardly examine the record and find sympathy for the contention that the defendant Cleo C. Wadsworth was a victim of a conspiracy which in its inception was one to whip Hurst, but resulted in murder, when the evidence so clearly shows that he actually fired at Hurst and was guilty as charged in the indictment. We believe the charge complained of could not have misled the jury.

Where two defendants are charged with murder by assaulting the deceased and killing him with pistol and shot gun respectively, and the evidence shows both joined in the fusillade that brought about his death, each is guilty and it is not necessary to prove which one actually fired the fatal shot. See Sparks v. State, 113 Miss. 266, 74 South. Rep.

123; People v. Wilson, 145 N. Y. 628, 40 N. E. Rep. 392; State v. Gray, 116 Iowa 231, 89 N. W. Rep. 987; Watkins v. Comm., 123 Ky. 817, 97 S. W. Rep. 740; Sec. 4499 C. G. L. 1927.

The judgment is affirmed.

TERRELL, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.

CHAPMAN, J., dissents.

BROWN, J. (concurring)—It might be observed, in connection with the last question discussed in the foregoing opinion that the testimony of the physician, who examined the body of the deceased, was to the effect that the pistol bullet wounds were sufficient to cause death.

CHAPMAN, J. (dissenting)—The transcript shows that on November 10, 1937, the Grand Jury of Suwannee County, Florida, indicted plaintiff in error and nine others for murder in the first degree on seven counts. A severance was granted as to the plaintiff in error and he was tried on counts one, two and seven of the indictment. The first count charged the ten defendants, jointly, as principals in the first degree; the second count charged Robert M. Morrison and Cleo C. Wadsworth as principals in the first degree, and the other eight defendants as accessories; the seventh count charged Robert M. Morrison and Cleo C. Wadsworth with murder in the first degree and the two inflicted mortal wounds which caused the death of Ozzie O. Hurst on the day of October, 1927, in Suwannee County, Florida.

On the 15th day of November, 1937, the trial court adjudged Cleo C. Wadsworth insolvent, and on the 17th day of November, 1937, appointed A. C. Johnson, an attorney of the Live Oak bar, to represent him. The defendant was arraigned and entered a plea of not guilty on the 17th day

of November, 1937, and the lower court set the case for trial on November 23, 1937.

On November 23, 1937, a motion for a continuance of the trial of the cause was filed in the lower court by the defendant, supported by an affidavit of his attorney. The affidavit made it appear that the attorney for the defendant then about to be placed on trial for his life, had not had sufficient time in which to prepare the defense and that appointed counsel had been engaged in the actual trial and disposition of other cases and business before the court continuously after his appointment on November 17, 1937, until the 23rd of November, 1937, and that his time had been consumed in handling other business and for that reason he had not had sufficient time to investigate the law, and the evidence which defendant expected to produce to be considered by the jury when the cause was tried, and counsel suggested and requested of the lower court an extension of time of ten days, which he expected to consume in the preparation of defendant's case. The trial court denied the motion, placed the defendant upon trial, and he was convicted of murder in the first degree. The attorney's affidavit was not contradicted.

An appeal has been perfected to this Court and it is contended that the defendant below was denied his constitutional rights guaranteed to him by the State and Federal Constitutions in that he was not allowed sufficient time in which to prepare his defense, and that the judgment of murder in the first degree made and entered against him in effect means that he has been deprived of his life without due process of law, contrary to the State and Federal Constitutions.

For authority of a trial court to appoint counsel for an insolvent defendant indicted for a felony see: Section 8375 C. G. L. It is clear and supported by respectable

authority that a court of record having criminal juris-
diction has the inherent power, independent of statute, in
the administration of justice, as a necessary requisite of due
process of law to assign or appoint counsel for indigent
defendants, in capital cases, incapable of conducting their
own defense. See 14 Am. Jur. Par. 174. Likewise it is
suggested or pointed out that it is the duty of the court to
appoint counsel having sufficient ability and experience to
represent the defendant and to fully protect all his legal
rights. It has been held in some instances, where the
court appointed attorneys ignorant of the law, inexperienced
in the trial of criminal cases or one unfaithful in his profes-
sional duties, that it is ground for reversal. See 14 Am.
Jur., *supra*. It has been suggested that the attorney ap-
pointed for the defendant by training, ability and experience
should approach the professional attainments of counsel
representing the prosecution.

In the consideration of the case at bar of the rights
guaranteed by the State and Federal Constitutions of a
reasonable length of time to be allowed by the trial court
where the accused is charged with a felony in which to pre-
pare his defense, in this opinion will be treated, viz.: (a)
under the Constitution of Florida; (b) under the Federal
constitution; (c) the authorities of other jurisdictions.

### (a)   Under the Constitution of Florida

Section 1 of the Declaration of Rights of the Constitu-
tion of Florida provides:

"All men are equal before the law, and have certain in-
alienable rights, among which are those of enjoying and
defending life and liberty, acquiring, possessing and pro-
tecting property, and pursuing happiness and obtaining
safety."

It will be observed that this provision accorded the defendant equal rights of men before the law, not only in the enjoyment of life, but in the defense of his life, liberty and . . . protecting his property. In the case of State, *ex rel.* Spencer v. Bryan, 87 Fla. 56, 99 So. 327, this Court, speaking through Mr. Justice WHITFIELD, about the provision, *supra,* to the effect that every one is entitled to stand before the law on *equal terms,* the following exact language was used:

"The organic declaration that 'all men are equal before the law' may be regarded as a guarantee that all persons shall have equal consideration and protection of the law for the maintenance and security of the rights to which they are legally entitled. Noble v. State, 68 Fla. 1, 56 South. Rep. 153.

"The constitutional right of equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon others in a like situation."

Section 2 of the Declaration of Rights of the Constitution provides:

"All political power is inherent in the people. Government is instituted for the protection, security and benefit of the citizens, and they have the right to alter or amend the same whenever the public good may require it; but the paramount allegiance of every citizen is due to the Federal Government, and the people of this State have no power to dissolve its connection therewith."

Section 3, *supra,* grants the right of trial by jury and that this right shall be secured to all, and remain inviolate forever.

Section 4, *supra,* provides:

"All courts in this State shall be open, so that every per-

son for any injury done in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

This Court, in the case of Moore v. State, 59 Fla. 23, 52 So. 971, had before it a motion for continuance in a criminal case and held that in either granting or refusing a motion for a continuance the responsibility was on the Court to see that "right and justice shall be administered," and the language is, viz.:

"The statute authorizes the appellate court to review by writ of error and bill of exceptions a refusal of the trial court to grant a motion for the continuance of a cause and other matters *in pais.* Secs. 1693, 1694 and 4044, Gen. Stats. of 1906. But in reviewing such motions the appellate court is governed by established principles of judicial procedure designed to effectuate the provision of the constitution that 'right and justice shall be administered without * * * delay.' Sec. 4 of Bill of Rights; Owen v. State, 58 Fla. 84, 50 South. Rep. 639."

Section 10, *supra,* provides that no person shall be tried for a capital crime or felony unless on presentment or an indictment by a grand jury.

Section 11, *supra,* is viz.:

"In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face, and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him."

This Court, construing the above provision in the case of Moore v. State, 59 Fla. 23, 52 So. 971, said:

"In Section 11 of the Bill of Rights it is provided that 'In all criminal prosecutions the accused shall have the right to * * * have compulsory process for the attendance of witness in his favor,' but this right should be reasonably exercised so as not to cause a violation of the provision that 'Right and Justice shall be administered without, * * * delay.' The exercise of the right to have compulsory process for the attendance of witnesses is subject to legislative regulation that does not impair or deny its reasonable exercise for the benefit of the accused. In this case the motion for continuance states that a subpoena was issued for a witness, and it does not affirmatively appear that due diligence was not used by the officers to find the witness after the process was applied for and issued. An accused and his counsel are entitled to a reasonable time in which to prepare for a trial after an accusation of crime is made. What is a reasonable time is to be determined from all the facts and circumstances of the case * * * "

Likewise in the case of May v. State, 89 Fla. 78, 103 So. 115, when construing further Section 11, *supra*, it was said:

"The right of an accused in a criminal prosecution to be heard by himself or counsel, or both, cannot be denied him. Sec. 11, Declaration of Rights. But the limitation of the time for argument must of necessity, within reasonable bounds, rest in the discretion of the trial court. This is the general rule. The right may be waived, but when requested, reasonable time must be allowed. The question to be determined is what is reasonable time, and this depends upon the facts and circumstances of each case. No hard and fast rule can be prescribed. But if it appear that the time for argument is unreasonably limited, such action will be held an abuse of discretion requiring a re-

versal of the judgment for new trial. This statement of law finds general support in the adjudicated cases. * .* * "

In the case of Messer v. State, 120 Fla. 95, 162 So. 146, this Court construed Section 11, *supra,* and in doing so said:

"The constitutional right of an accused to be 'heard' by counsel is stated in language of emphasis that means just what it says. It should be respected in substance as well as in form by the trial courts. The United States Supreme Court in Powell v. State of Alabama, 287 U. S. 45, 53 Sup. Ct. Rep. 55, 77 L. Ed. 158, 84 A. L. R. 527, has gone so far as to hold that the constitutional rights to be heard by counsel is an indispensable part of due process of law itself as required by Federal law under the Fourteenth Amendment. The right to be heard by counsel being a constitutional one, it follows that no intentional, nor unintentional, frittering away of the constitutional privilege, in this regard should be tolerated in the form of a judge's charge to a trial jury calculated to convey to it the impression that respectable practitioners of law, when they appear in the criminal courts to defend persons accused of crime, are (in the vernacular of the underworld) to be looked down upon as mere 'mouthpieces' with whose arguments the trial juries should never be 'concerned.'

"Every trial jury should be left free to weigh and consider the evidence adduced before it in the light of all proper and reasonable arguments of counsel appearing both for the accused and the State, and for that reason alone the argument of counsel is of the highest importance to a defendant."

Similar language was used by the Court in the case of Deeb v. State, 131 Fla. 362, 179 So. 894, when it said:

"The provisions of the Constitution that in all criminal prosecutions the accused shall have stated particular rights,

include an express specific demand that the accused 'shall be heard by himself, or counsel or both.' These specific provisions are in addition to the rights secured by the general organic requirements of due process of law and equal protection of the laws; and all such organic guarantees and commands are designed to secure to an accused a fair trial in every aspect of a criminal prosecution in the name of the State. The absolute command of the Constitution that 'in all criminal prosecutions the accused * * * shall be heard by himself, or counsel, or both,' is more than a right secured to the accused. It is a mandatory organic rule or procedure in all criminal prosecutions in all courts of this State.

"The accused is entitled to the full benefit of the assumed rectitude of his counsel; and counsel should not needlessly be discredited in the presence of the jury."

Section 12 of the Declaration of Rights, *supra,* is viz.:

"No person shall be subject to be twice put in jeopardy for the same offense, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property with due process of law; nor shall private property be taken without just compensation."

This Court, from time to time, since the adoption of the Constitution of Florida, has considered or interpreted the above provisions in many criminal cases with reference to a reasonable length of time allowed by a trial court in which the defendant and his attorney should be allowed in preparing for trial.

In the case of Teddleton v. State, 131 Fla. 106, 178 So. 909, the defendant was informed against in two counts in the Criminal Court of Record of Orange County for murder in the second degree. On writ of error to this Court a new trial was granted and one of the reasons therefor being that the defendant had not had sufficient time in which to prepare his defense. The information was filed on January

5, 1937, and defendant was arraigned on the 11th day of January, 1937, and on the same day a jury was called and the defendant tried one of the grounds for a new trial being that sufficient time had not been granted in which to prepare his defense, and the motion was supported by a number of affidavits to the effect that affiants would give valuable evidence in behalf of the defendant if a new trial was granted. The defendant was allowed six days in which to prepare his defense.

In the case of Jarvis v. State, 115 Fla. 320, 156 So. 310, a capital case, defendant was adjudged insolvent and three attorneys were appointed on May 15, 1933, by the court to defend him. Counsel filed a motion for a continuance on May 15th, in which it was made known that counsel "had not sufficient time to interview defendant's witnesses or otherwise adequately prepare his defense." On May 15, 1933, defendant, over the objection of counsel, was placed on trial and convicted, and the judgment was affirmed in this Court, when the following language was used:

"The Constitution secures to an accused person the right to a speedy and public trial by an impartial jury in the county where the crime was committed and to be heard by himself or counsel or both, etc. Sec. 11, Bill of Rights Const. 1885.

"None of those rights were taken from the accused, nor was an impediment to their full and free enjoyment by the accused placed in his way. Counsel's mere statement in their motion that they did not have time to prepare the defense is not sufficient. No facts are given on which to base such a statement, nothing is said as to the character of defense and the complex nature of it that would require more time, nor is anything said about witnesses and what was expected to be established by them, nor that the accused himself depended upon any named witnesses not

within the jurisdiction of the court by whom he expected to prove the character of the act by which the life of the woman was taken.

"The case is of a serious character because the offense involved is a capital one, and though this Court has no power to determine the question of the guilt of the accused, but has the power only to determine whether the lower court committed error in denying the continuance * * * *"

In the case of Reed v. State, 94 Fla. 32, 113 So. 630, the defendant was indicted on September 7, 1926, for murder in the first degree. Counsel for defendant was appointed by the court and defendant was placed on trial on September 8, 1926. The record fails to show that counsel requested further or additional time in which to prepare for trial. The defendant was convicted and on appeal the judgment was affirmed and the court further stated that there was no general principle of law fixing the time after indictment and prior to trial in which counsel may prepare for trial, as this rests in the sound discretion of the trial court as the time necessary for preparation for trial in one case may be insufficient in another.

In the case of Christie v. State, 94 Fla. 469, 114 So. 450, the defendant was indicted for rape alleged to have been committed on October 15, 1926. He was arrested in Orlando on October 18, 1926, and moved to Tampa for safe keeping. He was returned to Orlando on November 1, 1926, arraigned, motion for continuance denied, placed on trial on same day, convicted, and on appeal it was contended that he was deprived of a reasonable time in which to prepare his defense in the lower court. It was held that the defendant "in the light of the facts here shown"

was denied a fundamental right guaranteed him by the Constitution. It was said:

"Our country is committed to the doctrine that no matter what the crime one may be charged with he is entitled to a fair and impartial trial by a jury of his peers. Such a trial contemplates counsel to look after his defense, compulsory attendance of witnesses if need be, and a reasonable time in the light of all the prevailing circumstances to investigate, properly prepare and present his defense. When less than this is given the spirit and purpose of the law is defeated. Moore v. State, 59 Fla. 23, 52 So. 971; State v. Pool, 50 La. Ann. 449, 23 So. 503; Brown v. State, 88 Fla. 457, 102 So. 546; Anderson v. State, 92 Fla. 477, 110 So. 250."

In the case of Anderson v. State, 92 Fla. 477, 110 So. 250, the defendant was indicted, tried and convicted of murder in the first degree. The record shows that the homicide occurred on the night of April 28th, the indictment was found on May 11th, and the defendant arraigned on May 12th, when the case was set for trial on May 19th, which allowed the defendant *six* clear days in which to prepare for trial. This Court reversed the judgment and held that a "limit of six days made such an investigation practically impossible, and that the defendant thereby was deprived of the opportunity to prepare for his defense."

In the case of Coker v. State, 82 Fla. 5, 89 So. 222, the indictment was presented on December 20, 1920, charging that the defendant committed rape on September 5, 1920. The defendant, over objection, was required to plead on the same day the indictment was presented, was denied a copy of the indictment and required by the trial court to stand trial, over objection of counsel, without allowing time in which to prepare his defense. He was convicted and upon a reversal of the said judgment this Court, in part, said:

The constitution of this State provides: that in all

prosecutions the accused shall have the right to a speedy and public trial, by an impartial jury, shall be heard by himself or counsel or both, shall have the right to demand the nature and cause of the accusation against him, the right to meet the witnesses against him face to face, have compulsory process for the attendance of witnesses in his favor and shall be furnished with a copy of the indictment against him. See Declaration of Rights. Sec. 11, Const. 1885. The rights above enumerated naturally grow out of the fundamental principle that every person shall be protected in the enjoyment of his life, liberty and property except as they might be declared to be forfeited by the judgment of his peers or the law of the land. In substance, with the exception of the last provision, the rights enumerated are embraced and made a part of the sixth amendment to the constitution of the United States. They were foreshadowed in Magna Charta upon which the fabric of constitutional liberty was slowly and patiently erected. See Cooley's Principles of Constitutional Law.

"These provisions secure to every person accused of crime a fair and impartial trial. The words are full of meaning and it is the duty of courts to observe and obey them. Justice requires and it is the universal rule observed in all courts of this country it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error, it strikes at the root and base of constitutional liberties, it makes for a deprivation of liberty or life without due

process of law, it destroys confidence in the institutions of free America and brings our very government into disrepute * * *

"It is almost impossible to imagine a state of circumstances under which such unbecoming haste would be justified in a court of justice. The offense with which the defendant was charged was a repulsive one, and if proven in an orderly, decorous and legal manner, there could be no doubt as to the retribution the law would exact, but when citizens are denied their constitutional rights in a court of justice, no person is wise enough to foretell the possible harm that may result to humanity."

In the case of Browne v. State, 88 Fla. 457, 102 So. 546, the defendant was indicted for murder in the first degree on November 15, 1923, when an attorney was appointed to defend him. The case was set for trial on November 19, 1923, when a motion was made for a postponement until November 23, 1923, because the attorney for the defendant had not sufficient time to prepare for trial and the defense of the defendant. The motion was denied by the trial court and the defendant placed upon trial and convicted, and upon appeal here the same was reversed for a new trial as the time allowed for preparation for trial was insufficient, and the Court in part said:

"Application for postponement or continuance is addressed to the sound judicial discretion of the trial court and the ruling of the court either granting or denying such application will not be disturbed unless an abuse of this discretion is clearly shown. But an accused and his counsel are entitled to a reasonable time in which to prepare for trial after indictment, and the ruling of a trial court denying an application for postponement or continuance is subject to review on writ of error. Where, in a criminal prosecution, an abuse of discretion is clearly shown and it appears that

in the furtherance of justice a new trial should be awarded, a judgment of conviction will be reversed because of such error. Moore v. State, 59 Fla. 23, 52 South. Rep. 971; Clinton v. State, 53 Fla. 98, 43 South. Rep. 312.

"In view of the showing of defendant's impaired mental faculties previous to the alleged crime, requiring his detention in a hospital for the insane, and injuries sustained while in the military service, resulting in alleged delusions and periodical insanity and that he was held practically *incommunicado* except as to the attorney appointed to represent him, to whom he was a stranger, from the date of the indictment to the time of his trial, we are constrained to hold that the denial of the motion for a week's postponement of the trial for preparation was error and the ends of justice require a new trial."

The motion for a continuance for ten days in which counsel desired to prepare for trial was filed on November 23, 1937. The appointment of counsel was made on November 15, 1937, which allowed about seven clear days for preparation of trial, but the attorney under oath states (which is not contradicted by the State on any point) that "counsel has been engaged in the actual trial and disposition of other cases every day since his appointment and has had no time in which to investigate authorities, together with the evidence which this defendant will produce at his said trial." It is not clear that the entire time of the attorney had been consumed in the court where the defendant was to be tried or in some other court, but the files and records of the proceedings in the Court of Suwannee County were available to all to contradict the truth of the statements contained in the affidavit, which was not done. Let the facts in the affidavit be considered as true, then it remains an undisputed fact that defendant's counsel had not had sufficient time to prepare for trial, and when he was forced

into trial without preparation, regardless of his skill and ability as a trial attorney, the trial then became purely an *ex parte* proceeding. If a lawsuit is an inquiry as to where the truth in the controversy over legal rights involving person or property, then the defendant here was bound to suffer because his attorney was denied sufficient time necessary to his defense. His unpreparedness is reflected in the verdict. The fundamental law accords the defendant time in which to prepare for trial. If an indigent defendant is by the trial court, on request for time in which to prepare for trial, denied the usual incidents of the aid of counsel, then but little necessity exists for the appointment of counsel. The fact that his motion was defective or failed in some minor detail to reflect a substantial compliance with some former decisions of this Court as to the contents of a motion for a continuance is not a sufficient answer for invading the guaranteed rights of a person charged with crime. This motion, in a manner, was a red light, warning the entire world of his fundamental rights, and the signal should have been obeyed.

### (b) Under the Federal Constitution.

The Fifth Amendment to the Federal Constitution provides that no person shall be held to answer a capital offense . . . unless on a presentment or an indictment. It is viz.:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private

property be taken for public use, without just compensation."

The Sixth Amendment provides that in all criminal prosecutions the accused shall have compulsory process for his witnesses; be confronted with witnesses against him, and to have the assistance of counsel for his defense. It is viz.:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Section 1 of Article XIV, *supra,* provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Supreme Court of the United States, in the case of Johnson v. Zerbst, decided May 23, 1938, and reported in 304 U. S. 458, 58 Sup. Ct. Rep. 1019, 82 L. Ed. 1461, had before it on certiorari a petition for writ of habeas corpus wherein petitioner was serving a sentence in the United States Penitentiary at Atlanta, Georgia, under a conviction for possessing, uttering and passing counterfeit money. It was alleged in the petition that the petitioner was tried in

the Federal District Court without the aid or assistance of counsel. There was no request on the part of the defendant for the appointment of counsel by the trial court, and neither was counsel appointed, and the defendant there, petitioner here, was convicted without the assistance of counsel. The Federal District Court of Atlanta denied the petition for a writ of habeas corpus and the ruling was affirmed by the Circuit Court of Appeals. See 92 Fed. (2nd) 748. But these rulings were reversed by the United States Supreme Court, which in part said:

"The Sixth Amendment guarantees that: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to ' * * * the humane policy of the modern criminal law * * * ' which now provides that a defendant ' * * * if he be poor, * * * may have counsel

furnished him by the State, * * * not infrequently * * * more able than the attorney for the State.'

"The ' * * * right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel."

The transcript in the case at bar shows that the defendant was supplied with counsel by an order of the Court, but counsel appointed was by a subsequent order of the court denied the fundamental right guaranteed him by the State and Federal Constitutions, viz.: sufficient time for consultation and preparation of his defense. Appointed counsel, by an affidavit on November 23, 1937, made known to the court that seven days had elapsed since his appointment and during the seven days he had been engaged in the handling of business before the Court. The effect of the order was to deprive the defendant of rights which the trial court was bound as a matter of law to respect.

. The case of Powell v. Alabama, 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, is a clear case holding that in capital cases it is the duty of the trial court to

appoint counsel for indigents and with it is implied that allowance of sufficient time will be granted for counsel to prepare for trial, which was denied in the case at bar. The United States Supreme Court, in Powell v. Alabama, *supra*, (287 U. S. text pages 71-73) said:

" . . . . All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. To hold otherwise would be to ignore the fundamental postulate, already adverted to, 'that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' *Holden v. Hardy, supra* (169 U. S. 366, 389).

"In a case such as this, whatever may be the rule in other cases, the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel. Compare *Carpenter & Sprague* v. *Dane County*, 9 Wis. 274; Dane County v. Smith, 13 Wis. 585, 586, *Hendryx* v. *State*, 130 Ind. 265, 268-269; 29 N. E. 1131; *Cutts* v. *State*, 54 Fla. 21, 23; 45 So. 491; *People* v. *Goldenson*, 76 Cal. 328, 344; 19 Pac. 161; *Delk* v. *State*, 99 Ga. 667, 669-670; 26 S. E. 752.

"In *Hendryx* v. *State, supra*, there was no statute authorizing the assignment of an attorney to defend an indigent person accused of crime, but the court held that such an assignment was necessary to accomplish the ends of public justice, and that the court possessed the inherent power to

make it. 'Where a prison,' the court said (p. 269), 'without legal knowledge, is confined in jail, absent from his friends, without the aid of legal advice or the means of investigating the charge against him, it is impossible to conceive of a fair trial where he is compelled to conduct his cause in court, without the aid of counsel . . . Such a trial is not far removed from an *ex parte* proceeding.' Let us suppose the extreme case of a prisoner charged with a capital offense, who is deaf and dumb, illiterate and feeble minded, unable to employ counsel, with the whole power of the state arrayed against him, prosecuted by counsel for the state without assignment of counsel for his defense, tried, convicted and sentenced to death. Such a result, which, if carried into execution, would be little short of judicial murder, it cannot be doubted would be a gross violation of the guarantee of due process of law; and we venture to think that no appellate court, state or federal, would hesitate so to decide. See *Stephenson* v. *State*, 4 Ohio App. 128; *Williams* v. *State,* 163 Ark. 623, 628; 260 S. W. 721; *Grogan* v. *Commonwealth,* 222 Ky. 484, 485; 1 S. W. (2d) 779; *Mullen* v. *State,* 28 Okla. Cr. 218; 230; 230 Pac. 285; *Williams* v. *Commonwealth,* (Ky.) 110 S. W. 339, 340. The duty of the trial court to appoint counsel under such circumstances is clear as it is clear under circumstances such as are disclosed by the record here; and its power to do so, even in the absence of a statute, can not be questioned. Attorneys are officers of the court, and are bound to render service when required by an appointment . . ."

It is useless to multiply authorities because this principle of law is too well settled.

(c)   *The authorities of other jurisdictions.*

Cooley on Constitutional Limitations, Vol. 1 (8th Ed.) pages 700-703, holds that a person charged with crime has the right to the aid of counsel with all of its *accustomed incidents* and that his right is guaranteed by the Constitution. It is reasonable to assume that one of the incidents of the assistance of counsel is sufficient time in which to prepare for trial.   The exact language is, viz.:

"With us it is a universal principle of constitutional law, that the prisoner shall be allowed a defense by counsel. And generally it will be found that the humanity of the law has provided that, if the prisoner is unable to employ counsel, the court may designate some one to defend him who shall be paid by the government; but when no such provision is made, it is a duty which counsel so designated owes to his profession, to the court engaged in the trial, and to the cause of humanity and justice, not to withhold his assistance nor spare his best exertions, in the defense of one who has the double misfortune to be stricken by poverty and accused of crime.   No one is at liberty to decline such an opportunity, and few, it is to be hoped, would be disposed to do so.   In guaranteeing to parties accused of crime the right to the aid of counsel, the Constitution secures it with all its *accustomed incidents*. Among these is that shield of protection which is thrown around the confidence the relation of counsel and client requires, and which does not permit the disclosure by the former, even in the courts of justice, of communications which may have been made to him by the latter, with a view to pending or anticipated litigation.   This is the client's privilege; the counsel cannot waive it; and the court would not permit the disclosure even if the client were not present to take the objection.

"(The accused has the right to have all his counsel represent him during his entire trial and it is reversible error to exclude them, or any one of them, from the court-room at any stage of the trial.)

.."Having once engaged in a cause, the counsel is not afterwards at liberty to withdraw from it without the consent of his client and of the court; and even though he may be impressed with a belief in his client's guilt, it will nevertheless be his duty to see that a conviction is not secured contrary to the law. The worst criminal is entitled to be judged by the laws; and if his conviction is secured by means of a perversion of the law, the injury to the cause of public justice will be more serious and lasting in its results than his being allowed to escape altogether."

The following citations show the general trend of the holdings of courts of other jurisdictions on the point of the allowance of sufficient time to counsel in which to prepare for trial:

In Carsons v. Commonwealth, 243 Ky. 1, 47 S. W. (2d) 997, the Court said:

"It is argued here * * * that the constitutional right of an accused has been denied him by the trial court refusing to grant the continuance until he and his counsel to their own satisfaction had time in which to prepare in their own way his defense. It is true that the constitutional right of an accused to be represented by counsel necessarily carries with it the right of his counsel to have reasonable time and opportunity to prepare the case. McDaniel v. Commonwealth, 181 Ky. 766, 205 S. W. 915; Piercy v. Com., 195 Ky. 725, 244 S. W. 52. It is also true that it is of greater importance for justice to be certain and sure than to be too speedy, and the court, when giving an accused a trial should be careful to avoid being rushed into hasty conclusions by popular clamour or public sentiment, but should give to

each side a fair hearing. Fuson v. Com. 199 Ky. 804, 251 S. W. 955. 'It is not the purpose of the law to deprive any person of his life or liberty without giving him reasonable opportunity to establish his innocence, and the dignity and majesty of the law can be better vindicated by allowing this opportunity than by forcing the accused into a trial so soon after the commission of the offense with which he is charged as that he cannot in reason be prepared to answer with the care and preparation demanded by the nature of the charge against him.' Allen v. Com., 168 Ky. 325, 182 S. W. 176; Miller v. Com., 197 Ky. 703, 247 S. W. 956."

In Commonwealth v. O'Keefe, 298 Pa. 169, 148 Atl. 73, the Court said:

"Commonwealth v. Jester, 256 Pa. 441, 100 A. 993, holds that under the state Constitution a defendant must be given a fair opportunity to present his defense, and to that extent supports our conclusion in the instant case, although under different facts. Our state Constitution, Article 1, Sec. 9, provides that the accused cannot 'be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.' The 'law of the land' like 'due process of law' requires timely notice and an opportunity to defend. It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter opportunity to acquaint himself with the facts or law of the case."

In 16 C. J., Criminal Law, Sec. 875, p. 443-484, it is stated:

" * * * where no lack of diligence is shown, either on the part of accused or of his counsel, and it is clear that counsel has had insufficient time to investigate and examine the law applicable to the case, it is reversible error to refuse a continuance, without at least offering in lieu of it to postpone the trial for a reasonable time. Especially is this true

where counsel is appointed by court, in which case greater indulgence should be allowed."

In State v. Collins, 104 La. 629, 29 So. 180, 81 Am. St. Rep. 150, the court said:

"The right 'to have the assistance of counsel' is one conferred by the constitution itself. Reasonable time to prepare for his defense should have been allowed the counsel, who had by direction of the court undertaken its responsibility. Only in this way could their 'assistance' be made effective. Theirs was a task to be discharged without recompense. They had other duties to perform in connection with the court, growing out of employment in other cases bringing them professional fees. It was not to be expected they would lay these aside and devote themselves solely to preparation for the defense of the instant case which brought them no reward."

In People v. Kurant, 311 Ill. 470, 163 N. E. 411, it is said: "Counsel received notice of his appointment to defend the plaintiff in error on the 16th day of January. Twelve days later plaintiff in error was sentenced to death. Counsel sought with diligence to withdraw the plea of guilty, but owing to other prior professional engagements was unable properly to prepare his defense within the time allowed and made a motion for a continuance. That motion was denied. The trial court's duty to assign competent counsel to defend an accused person who is unable to employ one is not intended to be a mere empty formality, and the counsel thus appointed should not be compelled to act without being allowed a reasonable time within which to understand the case and to prepare the defense. People v. Bobb, 279 Ill. 184, 116 N. E. 679; North v. People, 139 Ill. 81, 28 N. E. 966. Under the facts shown, appointed counsel was denied a reasonable opportunity to investigate the instant case and to prepare the defense of the plaintiff in error."

In North v. People, 139 Ill. 81, 28 N. E. 966, only ten days intervened between the appointment of counsel to defend the prisoner and the time set for his trial. During six days of that time the counsel were actively engaged in the trial of other cases in which they had been previously retained. Before their appointment said counsel had been retained by the prisoner upon condition of his paying them a certain fee, which condition he was unable to perform. Affidavit that counsel was unable to prepare for the defense of the case was filed in support of a motion for continuance. The motion for continuance was not granted in the lower court. The Supreme Court, in reviewing that ruling, said:

"Although it was the duty of Strawn & North to act as counsel for North, and conduct his defense, after they were appointed for that purpose by the court, they were not required, nor would they have been allowed, to neglect the business of clients by whom they had been previously retained in order that they might do so. The trials named in the affidavits of Strawn left but a brief period before the day this case was set down for trial, to be devoted to this case, and we cannot say that we had known, contrary to the allegations of this affidavit, that it was sufficient under all the circumstances disclosed by the affidavits, to enable them to fully present for their client his defense under the law, and thus prevent injustice being done him by the verdict of the jury. It is provided by our statute that 'every person charged with crime shall be allowed counsel, and when he shall state upon oath that he is unable to procure counsel, the court shall assign him competent counsel, who shall conduct his defense.' Section 422, C. 38, Rev. St. 1874, p. 410. We are not to assume that this was intended to be a mere empty formality, and that the counsel thus appointed should be compelled to act without being allowed reasonable time within which to understand the case and

prepare the defense.   See State v. Ferris, 16 La. Ann. 425;
State v. Simpson, 38 La. Ann. 23.   We are not unmindful
of the previous conditional employment by North of the
same counsel, but they were not required to take any steps
in the case until North complied with the condition of their
employment by securing the stipulated fee, which, by reason
of his poverty, he was unable to do; and the affidavits show
that they did nothing under that employment beyond ap-
pearing when North was arraigned, and having the plea of
not guilty entered, and thereafter entering a motion for
continuance of the case, and preparing and presenting af-
fidavits in support thereof."

In Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591,
the killing occurred December 13th.   The defendant was
immediately arrested and jailed.   The first indictment was
returned on December 17th, and when that one was quashed
another indictment was returned on December 21st.   A mo-
tion for continuance was filed on December 21st and again
on December 31st, the day of trial.   The court refused to
grant the continuance.   On appeal the appellate court said:

"In view of the fact that the defendant had been confined
in jail ever since the killing 14 miles from the scene of the
homicide, and that he had had no opportunity to prepare
his defense, as shown by the affidavit of his attorneys ac-
companying his affidavit on the motion for a continuance,
we are clearly of the opinion that the defendant had not
had a reasonable opportunity to prepare and present his
defense."

In the case of People v. Dunham, 334 Ill. 516, 166 N. E.
97, that Court said:

"No person accused of a serious crime should be forced
to trial without a reasonable opportunity to employ counsel
and properly prepare his defense.   People v. Singer, 288
Ill. 113, 123 N. E. 327.   Upon a proper showing that for

want of time counsel has not been able to properly prepare the case, or that witnesses are not in attendance who might be found on time being given, or that the cause is not ready for trial for want of opportunity for preparation owing to no fault of the accused, the court, in the exercise of wise discretion, should postpone the trial to a later day in the term or continue the cause, if necessary. Davey v. People, 116 Ill. 555, 6 N. E. 165; North v. People, 139 Ill. 81, 28 N. E. 966."

The evidence shows a conspiracy to whip or lash the deceased by the defendant and nine others jointly indicted, and nothing more. The record is without substantial testimony to show a conspiracy to murder, but much unlawful and prejudicial testimony was introduced upon this theory.

For the error pointed out, the judgment appealed from should be reversed and a new trial granted.