46 So.2d 880 (1950)
SHEPHERD et al.
v.
STATE.
Supreme Court of Florida, en Banc.
May 16, 1950.
Rehearing Denied July 5, 1950.
*881 Alex Akerman, Jr., Joseph E. Price, Jr., and Akerman, Akerman & Price, Orlando, and Franklin H. Williams, New York City, for appellants.
Richard W. Ervin, Atty. Gen. and Reeves Bowen, Asst. Atty. Gen., and J.W. Hunter, Tavares, for appellee.
CHAPMAN, Justice.
On July 20, 1949, a grand jury of Lake County, Florida, presented an indictment in open court against Samuel Shepherd, Walter L. Irvin, Charlie Greenlee and Ernest A. Thomas charging each of them with the crime of rape. It alleged that each of the defendants with force and violence did feloniously ravish and carnally know a named female, then seventeen years of age, on July 16, 1949, in Lake County, Florida. On August 12, 1949, the defendants (except Ernest A. Thomas) were brought into court, accompanied by their attorney Harry E. Gaylord, and were asked if they were ready for arraignment, and, having answered through counsel in the affirmative, they were duly arraigned and each entered a plea of not guilty to the indictment.
It appears by the record that the three defendants are colored men. When the men were arraigned Samuel Shepherd was 22 years of age, Walter L. Irvin was 22, *882 and Charlie Greenlee was about 16, but his father was in attendance at the arraignment. Samuel Shepherd and Walter L. Irvin were residing with their parents in the Groveland area, being the southern portion of Lake County, while Charlie Greenlee was working at Gainesville but was visiting with Thomas in the Groveland area of Lake County on the night of July 15, 1949. These men were not able financially to employ counsel and at the time of arraignment were represented by an attorney appointed by the court. Each was arrested within a few hours after the commission of the alleged crime and by an order of the court transferred for safekeeping from the Lake County Jail to the State Prison at Raiford, but each was returned to Tavares on August 12, 1949. On August 12, 1949, the case was set by the court for trial August 29, 1949.
A New York attorney, having a connection with a certain fund under the control of the National Association for the Advancement of Colored People, came to Florida and interviewed the defendants at the Raiford Prison and otherwise made an investigation into the guilt of the defendants. He returned to New York from Florida with his report. He came to Florida on the case for the second time for the purpose of employing counsel for the defendants. He interviewed several Florida attorneys prior to obtaining counsel but succeeded on the night of August 22, 1949. On August 24, 1949, the recently retained counsel appeared in court and presented numerous motions. Attorney Gaylord, of the Eustis bar, declined to accept employment in behalf of the defendants but stated in open court if he were by the trial court appointed to represent the defendants he would honestly endeavor to discharge his duty and obligation as an officer of the court. After counsel was obtained by the defendants attorney Gaylord was discharged as counsel by an order of the court.
The record discloses that considerable testimony and many exhibits were offered in support of the several motions presented to the Court for the defendants. The time between August 24th and 29th, 1949, was largely consumed in the presentations to the trial court of the evidence in support of the motions, the merits of which will later be considered. The trial court, in light of developments, saw fit to reset the date of trial from August 29, 1949 until September 1, 1949, on which date the defendants were placed upon trial and a verdict of guilty rendered against each defendant, but the jury recommended mercy to Charlie Greenlee and as a result he was given a life sentence, but the death penalty was imposed in the court below as against Samuel Shepherd and Walter L. Irvin. Shepherd and Irvin have perfected their appeal here.
Samuel Shepherd, Walter L. Irvin and Charlie Greenlee, on August 29, 1949, petitioned the trial court for an order removing the cause to another county as provided in Chapter 911, F.S.A. The petition recited fourteen grounds for the removal of the cause. The pertinent reasons set out were: (1) the movants feared mob violence in Lake County; (2) the delay incident to the employment of satisfactory counsel; (3) the time for counsel to investigate and prepare for trial was insufficient; (4) the hostile public sentiment against the movants; (5) a mob gathered at the jail in Tavares and demanded that the movants be turned over to it; the home of the family of one of the movants was destroyed; members of the Negro race in the Groveland area were intimidated by the mob; widespread newspaper publicity in the area and other Florida counties had inflamed the public mind in Lake County; the public hostility and indignation in Lake County rendered it impossible to obtain a fair and impartial trial guaranteed by our State and Federal Constitutions; (6) a hostile atmosphere to the movants "now exists in Lake County and permeates the court house where the trial is to be had"; (7) "wild rumors are prevalent and mobs are likely to take the law into their hands"; (8) the inflamed public mind in Lake County will prevent the movants from testifying in their own behalf; (9) the movants were beaten by law enforcement officers of Lake County; (10) the law enforcement officers of Lake County were hostile to the movants and their attorneys; (11) the home of the father and mother of Samuel *883 Shepherd was burned by a mob and the family and other Negroes were removed from the Groveland area to prevent a lynching (but returned to their homes); (12) troops were called out to maintain order about Groveland; (13) intimidation of the Negroes prevents them from giving testimony in behalf of the movants; (14) a fair and impartial trial guaranteed by both the State and Federal Constitutions cannot be had in Lake County.
The State of Florida, by an appropriate pleading, denied each and every allegation set out by the movants for a removal of the cause and the trial court heard evidence on the issues made by the pleadings. This Court is committed to the rule that an application for a change of venue is addressed to the sound discretion of the trial court and so long as the applicable law is substantially complied with, a ruling refusing to grant a change in venue will not be disturbed except upon a showing that there has been a palpable abuse of discretion. Patterson v. State, 157 Fla. 304, 25 So.2d 713; Wadsworth v. State, 136 Fla. 134, 186 So. 435, and similar cases.
It is not disputed that Irvin and Shepherd lived at or near Groveland and a mob burned the Shepherd home and two other houses about Groveland; that shortly thereafter troops were called and stationed at Groveland to preserve order but were removed from the troubled area on July 24, 1949. It is true that strained racial relations existed in about a five-mile square area which embraced Groveland, Mascotte and Starkey's Still. The flare subsided on or before July 24, 1949, the colored people returned to the area, order thereafter prevailed and the troops were recalled. Our study of the record reflects the view that harmony and good will and friendly relations continuously existed between the white and colored races in all other sections of Lake County. The inflamed public sentiment was against the crime with which the appellants were charged rather than defendants' race. It is true that the newspapers carried reports of the alleged crime, but the impression of prejudice, if any made, yielded to the sworn testimony. A venire of 213 jurors issued and 81 jurors were examined on their voir dire when a jury of 12 men was obtained satisfactory to counsel and accepted to try the case.
Counsel for appellants cite our holding in Johnston v. State, 112 Fla. 189, 150 So. 278, and similar cases, to sustain the contention that the trial court erred in denying the motion for a change in venue. The facts presented here are in accord with our holding in Powell v. State, 131 Fla. 254, 175 So. 213; Hysler v. State, 132 Fla. 209, 181 So. 354; Wadsworth v. State, 136 Fla. 134, 186 So. 435, and Haddock v. State, 141 Fla. 132, 192 So. 802. An abuse of discretion in denying the motion has not been made to appear.
The trial court heard evidence in support of a motion by appellants to quash the indictment in the case at bar on the ground, among others, that the officials of Lake County, Florida, systematically and intentionally discriminated against members of the Negro race in selecting the grand jury which presented the indictment now before the court. For this reason it is contended that the grand jury was unconstitutionally obtained, although one member of the grand jury, it is admitted, was a colored man. Substantially the same motion to quash was directed to the venire of some 213 summoned to serve on the petit jury. Because of the similarity of the two questions presented here we are considering them as a single assignment. The members of the grand jury and the petit jurors required to render jury service during 1949 were taken from the same jury box.
Qualifications and Disqualifications of Jurors: Section 40.01, F.S.A., provides:
"(1) General qualifications.  Grand and petit jurors shall be taken from the male persons over the age of twenty-one years, who are citizens of the state, and who have resided in this state for one year and in their respective counties for six months.
"(2) General disqualifications.  No person, who shall have been convicted of bribery, forgery, perjury or larceny, or any *884 felony, unless restored to civil rights, shall be qualified to serve as a juror.
"(3) Duty of persons selecting jury lists.  In the selection of jury lists only such persons as the selecting officers know, or have reason to believe, are law abiding citizens of approved integrity, good character, sound judgment and intelligence, and who are not physically or mentally infirm, shall be selected for jury duty".
Section 40.02, F.S.A., directs the Board of County Commissioners of Lake County, Florida, during the first week in January of each year, to prepare and select a jury list. It is the duty of the Commissioners personally to select, from the list of male persons who are qualified to serve as jurors and make out a list of not less than 250 nor more than 500 persons qualified to serve as jurors, which list shall be signed and verified by said Commissioners as being personally selected and possessing the qualifications according to their best information and belief.
Section 40.06, F.S.A., provides for the transcription and preservation of lists of persons selected to serve as jurors and the Clerk of the Circuit Court, in the presence of the County Judge, shall write the name of the persons selected for jury duty on separate pieces of paper and shall deposit such pieces of paper in a box constructed so that it may be closed and locked. The Clerk shall keep such box in his custody but the key shall be delivered to and kept by the Sheriff. These persons so selected shall render jury service.
The Supervisor of Registration testified that Lake County had 14,182 voters. His record disclosed 13,380 white voters and 802 colored voters. Frank E. Owens, Chairman of the Board of County Commissions of Lake County, Florida, testified that he and other members of the Board prepared the list of jurors during January, 1949, and in so doing selected and placed on the jury list the names of white and colored persons. The names were taken from the voters registration list of Lake County in proportion to the number of white and colored persons whose names were on the voters registration books. The rule as testified about had been observed in Lake County for many years. It appears by the testimony of the officials of Lake County that the above statutes were substantially complied with in selecting persons for jury service.
Counsel for appellants point out that many Negro citizens of Lake County, during the year 1949 and prior years, were home owners; many owned, resided upon and operated farms situated in the county; some Negro citizens owned and operated private businesses therein; other Negro citizens held responsible positions and rendered some of the people of the county a public service; and that many of the Negro residents of Lake County were honest, dependable and substantial citizens. The officials of Lake County, it is contended, unconstitutionally and intentionally discriminated against the Negro citizens of Lake County in selecting persons for jury service for the year 1949 although one colored man was on the grand jury which presented the indictment against the appellants. Authorities are cited in their brief to sustain the contention. We have examined the authorities relied upon in light of the contention made and it is our conclusion that the evidence adduced fails to establish an unconstitutional, intentional and systematic discrimination by the officials against the Negroes of Lake County in January, 1949, when selecting the names of persons for jury duty as authorized by the statute of Florida.
On July 20, 1949, the grand jury of Lake County presented the indictment now before us in the court below. The defendants-appellants were placed on trial on September 1, 1949, or approximately forty-five days after the commission of the alleged crime. It is contended here by the appellants that this period of time was insufficient in which to prepare their case for trial. Section 11 of the Declaration of Rights of the Constitution of Florida, F.S.A. guarantees persons accused of crime a speedy public trial, by an impartial jury * * * and shall be heard by themselves or counsel * * * to meet the *885 witnesses against them face to face and shall have compulsory process for the attendance of witnesses in their favor. * * *
Our State and Federal Constitutions accord these Negro defendants-appellants equal rights of men before the law, not only in the enjoyment of life but in the defense of their lives, liberty and the protection of their property. All men are equal before the law. A defendant brought before a tribunal for trial, with power to take his life or liberty, wherein the prosecution is represented by experienced and learned counsel, then it is consistent with natural justice, and the policy of modern criminal law, that an accused, even if he is poor and unable to obtain counsel, shall be furnished counsel to protect his rights at each step of the proceeding. It is established law that no person accused of a serious crime should be forced into trial without a reasonable opportunity to obtain counsel and properly prepare his defense. Frequently the minds of reasonable men differ on what constitutes sufficient time to prepare for trial. The answer is found in the facts of each particular case.
It appears by the record that attorney Franklin H. Williams, of the New York City Bar, contacted the appellants at Raiford about the first of August, 1949. Some weeks thereafter they were returned to Tavares and attorney Gaylord was by the court appointed to represent them when they plead to the indictment. Attorney Williams employed counsel for the defendants and organized their defense. He participated in the trial below and orally argued the cause, with other counsel, at the bar of this Court. It is quite true that additional counsel was retained around August 22, 1949. The record reflects that all legal rights of the appellants were ably and thoroughly presented in the lower court and on appeal here. It is not clearly shown that the trial court committed reversible error in placing the defendants-appellants on trial within forty-five days after the commission of the alleged crime.
It is next contended that the evidence adduced by the prosecution to establish the crime of rape was legally insufficient; that it was impossible for the crime to have been committed within the limited time as testified to by the State witnesses. Two witnesses for the State testified as to the identity of the four Negroes. From the description of the automobile as given by the two witnesses the same was later located. The three defendants testified they were driving the car in question during the same hours of the early morning except they were driving in the Orlando area, which was in the opposite direction.
The four men during the time kept the woman covered with a pistol. One of the defendants when taken into custody shortly after the alleged crime had a pistol, which was filed as an exhibit by the prosecution. Near the scene of the crime a handkerchief and some cotton were found. The woman was found near the scene of the crime about dawn. A large track about the scene fit the shoe of one of the appellants. Cotton or lint about the car and broken glass in the automobile testified to by the woman assisted the officers in identifying the car which the appellants admit they were riding in at the exact hour the State charged the crime was committed. We find in the record detailed corroborative testimony of that as given by the prosecutrix. As we study the testimony, the only question presented here is which set of witnesses would the jury believe, that is, the State's witnesses or the testimony as given by the defendant-appellants. Disputes and conflicts in the testimony are for the jury. See Albritton v. State, 132 Fla. 801, 182 So. 286, and similar cases.
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON and ROBERTS, JJ., concur.